33904. CRUMBLEY et al. v. SOLOMON et al.

PER CURIAM.

This court is again confronted with the difficult task of resolving a church property dispute. Franklin Tabernacle attempted to withdraw from the Holiness Baptist Association by a majority vote of its members. The opposing members of Franklin Tabernacle and trustees of the Holiness Baptist Association sued the withdrawing members to establish the right of the Association to control local church property. After trial, the trial court directed a verdict in favor of the withdrawing members, finding that control of church property rested with a majority of the local congregation. We reverse.

*Carnes v. Smith,* 236 Ga. 30 (222 SE2d 322) (1976), identified two types of church government—congregational and hierarchical. If the church government is congregational, then a majority of its members control its decisions and local church property. If hierarchical, then we use "neutral principles of law" to determine whether the local church or parent church has the right to control local property. Those "neutral principles" are state statutes, corporate charters, relevant deeds, and the organizational constitutions of the denomination. *Carnes v. Smith,* supra, at 37, citing Maryland & Virginia Eldership of Church of God v. Church of God at Sharpsburg, 396 U. S. 367 (1970).

A congregational church has been defined as one "strictly independent of other ecclesiastical associations, and [one that] so far as church government is concerned, owes no fealty or obligation to any higher authority." Watson v. Jones, 80 U. S. 679, 722 (1871). On the other hand, "[h]ierarchical churches may be defined as those organized as a body with other churches having similar faith and doctrine with a common ruling convocation or ecclesiastical head." Kedroff v. St. Nicholas Cathedral of the Russian Orthodox Church, 344 U. S. 94, 110 (1952). Careful consideration of the minutes from 1923 onward of annual meetings of the Association has persuaded us that the Association's annual meetings, at which local churches were represented by elected delegates, were "common ruling convocation[s]" with ultimate authority over all local churches.

Having determined that the Holiness Baptist Association is hierarchical, then we must refer to state statutes, relevant deeds, corporate charters, and the organizational constitution of the denomination to determine whether the general church or local church controls the local property.

In this case, F. B. McKinnon deeded the property in 1927 "to Franklin Tabernacle of the Holiness Baptist Church in Coffee County, Georgia, and to the deacons of said church, to be held in trust by them and their successors for said church. To have and to hold the said bargained premises . . . to the only proper use, benefit and behoof of Franklin Tabernacle . . . its successors, and assigns, in fee simple." In 1927, Franklin Tabernacle was a member of the unincorporated Holiness Baptist Association, which had been formed in 1894.

The Association was first incorporated in 1953, but while the corporate charter authorizes the Association to own property, it does not refer specifically to ownership of local churches. However, the Disciplinary Rules of the Association provide, "The Association shall hold all church property, regardless if all members vote to change the church to some other faith. Also, that deeds of new churches be drawn up to be property of the Holiness Baptist Association until sold by the committee appointed by the Association." The Association first adopted this

rule in 1947. Since then, the rule has been printed each year in the Association's minutes.

In *Carnes v. Smith,* we identified the relevant state statutes as Code Ann. §§ 22-5507 and 22-5508. "Code Ann. § 22-5507 recognizes and validates deeds conveying land for church purposes according to the limitation set out in the deed and for use 'according to the mode of church government or rules of discipline . . .' Where the conveyance is made to trustees, Code Ann. § 22-5508 provides that such trustees hold the church property 'subject to the authority of the church or religious society for which they hold the same in trust . . .'" *Carnes v. Smith,* 236 Ga. at 38.

From 1947, the trustees of Franklin Tabernacle held the church property subject to the disciplinary rule that "the Association shall hold all church property, regardless if all members vote to change the church to some other faith." We therefore find that a trust for the benefit of the general church has been implied by the Association's discipline. We note that Franklin Tabernacle participated in making this disciplinary rule and did not contest its validity for 30 years. Because Franklin Tabernacle remained a member of the Association and accepted the benefits flowing from that relationship, it cannot now deny the existence of a trust for the benefit of the general church.

The withdrawing members of the local church have attempted to rely upon the deed from F. B. McKinnon which places record title in the trustees of the local church. A trust is a creature of equity. Whenever a trust is implied on real property, the court recognizes that equitable title is in someone other than the record owner. If this were a contest between the Association and a bona fide purchaser who relied upon the record title, then protection of the bona fide purchaser would be reasonable. But the contest is between the original parties, and both participated in the creation of the trust through the passage of the church discipline.

In recent years this court has looked consistently to the requirements of the church discipline in hierarchical denominations to avoid offending the prohibitions of the First Amendment. For example, in *Carnes v. Smith,* this

court rested the general church's right to the property on the church discipline. In *Jones v. Wolf*, 241 Ga. 208, 210 (243 SE2d 860) (1978), we held that the local church had the right of control of the local property because "no language of similar import" was found in the discipline of the Presbyterian Church. Because the discipline of the Holiness Baptist Association implies a trust in this case, we hold that the parent church controls local property.

The local church also has claimed that to impress a trust on Franklin Tabernacle for the benefit of the general church offends the intent of the grantor. At the time of the conveyance, Franklin Tabernacle was a member of the Holiness Baptist Association, although the Association had not yet passed the property provision of the church discipline.

Code Ann. § 22-5507 specifically applies to deeds "heretofore" or "hereafter" made and states that the trustees hold the property for use "according to the mode of church government or rules of discipline." In the deed from F. B. McKinnon, the property was granted to "Franklin Tabernacle said Party of the second part its successors, and assigns, in fee simple." This language contemplates successors and assigns, which the Association has become under its disciplinary rule.

Moreover, we cannot now enforce the grantor's intent because that intent is uncertain. The property was deeded to "Franklin Tabernacle of the Holiness Baptist Church." At the time of the grant, Franklin Tabernacle had a connectional relationship with the Holiness Baptist Association. The grantor might well side with the Holiness Baptist Association and the nonwithdrawing members of Franklin Tabernacle. We will follow the clear and longstanding church disciplinary rule rather than make the forbidden determination of which is the "true" Franklin Tabernacle. See Presbyterian Church in United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church, 393 U. S. 440 (1969). As the Supreme Court has stated: "The minority in choosing to separate themselves into a distinct body, and refusing to recognize the authority of the governing body, can claim no rights in the property from the fact that they had once

been members of the church or congregation." Watson v. Jones, 80 U. S. 679, 725 (1871). Accordingly, the trial court erred in directing a verdict in favor of the defendants.

The complaint also contains prayers for injunctive relief, which require the exercise of the trial court's discretion. Because some of the requested relief may be inappropriate, the denial of the plaintiffs' motion for summary judgment was not error.[1] Therefore, the direction of the verdict is reversed, and the case is remanded for further consideration in accordance with this opinion.

*Judgment reversed and remanded. All the Justices concur, except Undercofler, P. J., Jordan and Bowles, JJ., who dissent.*

ARGUED OCTOBER 11, 1978 — DECIDED MARCH 15, 1979 — REHEARING DENIED MARCH 28, 1979.

*Mills & Chasteen, Ben B. Mills, Jr., Rogers & McCord, John Rogers,* for appellants.
*E. Kontz Bennett, Sr.,* for appellees.

JORDAN, Justice, dissenting.

The majority opinion makes a fatal mistake in concluding that the relationship between the local Baptist Church (Franklin Tabernacle) and Holiness Baptist Association was hierarchical. Such an assumption, even under the facts of this case, flagrantly collides with the traditional well known reality that a Baptist Church prides itself in being a "congregational church."

The deed is clear in conveying the property "to the deacons of said church, to be held in trust by them. . ." Under a congregational system of church government, the title is vested in a majority of the church members and

---

[1]As to the prayer for enjoining the usage of the church's name, see *Carnes v. Smith,* 236 Ga. 30, 40 (2), supra.

the trial court was eminently correct in directing a verdict in their favor.

I would affirm and therefore dissent.

Bowles, Justice, dissenting.

I respectfully dissent from the majority opinion in this case. When the opinion of this court in *Presbyterian Church in the U. S. v. Eastern Heights Presbyterian Church,* 224 Ga. 61 (159 SE2d 690) (1968), was reversed by the Supreme Court of the United States (393 U. S. 440 (89 SC 601, 21 LE2d 658) (1960)), this court, reconsidering the matter in the light of the mandate from that court and consistent with its opinion, held: "1. The Supreme Court of the United States having stricken a portion of Georgia's implied trust theory, *the remainder falls also,* and there is no implied trust on the local church property in favor of the general church. 2. Since legal title to the property is in the local churches, the judgments sustaining their claims to such property are affirmed." (Emphasis supplied.) See: *Presbyterian Church in the United States v. Eastern Heights Presbyterian Church,* 225 Ga. 259 (167 SE2d 658) (1969).

I think I am safe in saying that it was then the consensus of the bench and bar in Georgia that there no longer existed an implied trust theory regarding church properties. However, in the body of that opinion this court said, "Therefore, a part of the rule having been stricken, the remainder falls with it, and there is no implied trust on the property in controversy. There was no other basis for a trust in favor of the general church, none being created by the deeds on the property, implied under the statutes of this state (Code Ann. §§ 108-106, 108-107), or required by the constitution of the general church. It will be remembered that the general church put no funds into this property."

Later, this court decided in *Carnes v. Smith,* 236 Ga. 30, 36 (222 SE2d 322) (1976), and by a narrow 4 to 3 majority adopted a portion of the language of the opinion in *Presbyterian Church v. Eastern Heights Presbyterian Church,* supra, saying (in reference to that case), "This court, therefore, left open the possibility of an implied trust in favor of a general church where *factors* other than

mere connectional relationship between a local and general church were present." (Emphasis supplied.)

The decision goes on to point out that the deed to the church in that case was made in the year 1852 to the "trustees of the *Methodist Episcopal Church at Mount Pleasant Academy.*" (Emphasis supplied.) The decision also indicates that the church had been a connectional church from its inception in 1852 and was thus subject to the book of discipline and the constitution of the United Methodist Church (formerly known as Methodist Episcopal Church). The discipline of the church made clear that church property was held by local trustees for the benefit of the *general church.* In *Carnes,* the deed itself indicated that it was for the benefit of the general church, and there may have been an implied trust for the general church because at the time the deed of entrustment was executed in 1852, the discipline of both the local church and the connectional church provided that all properties were to be held for the benefit of the general church. Thus, we reintroduced an implied trust theory which *Carnes,* supra, held was based on "neutral principles of law."

It is extremely difficult to differentiate those principles of church discipline which regulate conduct, some of which required refraining from the use of tobacco in this instance, and those which apply merely to property rights. It seems the requirement that all properties be held for unity of purpose by the common body is as much theological in its purpose and scope, in promoting church doctrine and a plan of salvation, as other doctrines which require adherence to creeds, tenets of faith or acts of omission or commission on the part of the church members.

But assuming for the sake of discussion the church discipline that requires all properties to be owned by the general church is not doctrinal but is purely a "neutral principle of law" we note that this "neutral principle of law" existed at the time the deed of entrustment was made in the *Carnes* case in 1852 and, therefore, the so-called "implied trust" was created if at all by the execution and delivery of the deed in that case. But times change, judges change, and the doctrine of stare decisis seems to be less viable year by year. (See, *Hall v. Hopper,*

234 Ga. 625, at 630 et seq.)

Now the majority goes one step further. When the deed in the present case was made in the year 1927, there was no church discipline local or connectional, which required church properties be owned by the general church. When the trustor, here a Mr. McKinnon, decided to make his deed of entrustment he made the same for the benefit of a church that had no such discipline. The entrustment clause said, "This deed is made to *Franklin Tabernacle* of the Holiness Baptist Church in *Coffee County, Georgia,* and to the deacons of *said church,* to be held in trust by them and their successors *for said church.*" (Emphasis supplied.) Upon the execution, delivery and acceptance of this deed, the trust to this property was created for the local church. There was no implied trust in favor of the general or connectional church and no discipline on which to rely as a neutral principle of law to make the beneficiary of the trust the general or connectional church. For 26 years the trustees of the local church held title to the local property for the benefit of the local congregation.

We unanimously approved the same theory as recently as last year in the case of *Jones v. Wolfe,* 241 Ga. 208, p. 211 (243 SE2d 860) (1978), where we said: "This case is distinguishable from *Carnes,* in which this court found an implied trust in favor of the general church, the United Methodist Church, because its book of discipline provided that 'title to all real property now owned or hereafter acquired by an unincorporated local church . . . shall be held by and/or conveyed to its duly elected trustees. . .and their successors in office,. . .in trust, nevertheless, for the use and benefit of such local church and the United Methodist Church.' No language of similar import is to be found in the Presbyterian Book of Church Order contained in the stipulations of the parties in the present case. The trial court found that the Vineville Presbyterian Church had been a connectional church within the Augusta-Macon Presbytery and the Presbyterian Church in the United States but correctly held that '*more than a mere connectional relationship between the local and general church must exist*' to give rise to property rights in the general church." (Emphasis

supplied.)

In the case now under consideration, after twenty-six years passed, the *association's* discipline, not the local church's discipline, was changed for the first time to read, "the association shall hold all church property, regardless if all members vote to change the church to some other faith." Did the title by way of entrustment then and there change? Did the trust documents, and the trust beneficiaries change, ipso facto, from the local church to the connectional church? How then did title, legal or beneficial, get transferred from the local church to the connectional church? It was not done in the original deed of entrustment as we last year held in *Jones v. Wolfe,* supra, and there was no present transfer of title by any mesne conveyance. The majority opinion studiously avoids this question and suggests that the trustees of the local church held the property subject to that disciplinary rule for a period of 30[1] years and failed to contest its validity. The majority say that because of this and because it failed to contest the discipline of the association and because it accepted the benefits flowing from that relationship, "it cannot now deny the existence of a trust for the benefit of the general church."

Without using the term, this language implies estoppel. Other states may have lax rules regarding the transfer of title to real estate by estoppel, but the law in Georgia in that regard is clear and there is no plausible way that a theory of estoppel can be relied upon to reach the result which four members of the court have reached in this case. See: *Bennett v. Davis,* 201 Ga. 58 (39 SE2d 3) (1946), and cits., and *Jackson v. Lipham,* 158 Ga. 557 (3) (123 SE 887) (1924).

In *Coles v. Wilburn,* 241 Ga. 322 (245 SE2d 273) (1978), we unanimously rejected a theory of estoppel even though in that case the connectional church had urged that an implied trust had arisen from the long

[1]The facts indicated plaintiffs were chartered in 1953. There was evidence that an association may have adopted the by-laws in 1947 or 20 years after the trust deed.

relationship of over 50 years between the local church and the connectional church. There the associational by-laws required the local church to "incorporate legally" and to "deed their property as required" as set forth in the book of discipline. Nevertheless, we held unanimously that the local church had not deeded its property as required by the rules, and although we can assume the local church gained all the benefits from its long relationship over a 50 year period, no actual deed was made, the local church was not estopped, and no connectional relationship was established.[2]

What is left? Did the beneficiaries here enlarge their own entrustment without the consent of the trustor? As at common law, the trustees in Georgia hold title to the trust property. *Kerr v. White,* 52 Ga. 362 (1874). The record is void of any proof that any trustee has participated in or consented to any change if in fact a trustee could legally do so.[3]

"It may be stated as a general rule that a deed or other instrument creating a trust not subject to alteration or amendment by its terms, and entered into understandingly by the parties, cannot be modified or amended except with the consent of all the parties." 52 ALR 686, citing *Vason v. Gilbert,* 99 Ga. 220 (25 SE 409) (1896). Also see, *Watkins v. Watkins,* 64 Ga. App. 344, 347 (13 SE2d 100) (1941).

Without specific authority to do so, the trust

---

[2]If estoppel is not the premise, are we to accept the theory, that were a local church a member of an association of churches and the association adopts a by-law making all church properties connectional, title to local church property then and there divests?

[3]Although there is clear legal distinction and purpose in the significance and identity of the trustor, the trustees and the cestui que trust, no attempt has been made to separate their actions, duties and responsibilities in this case. The opinion uses unclear expressions such as "But the contest is between the *original parties,* both participated in *creation of the trust* through the passage of church discipline." (Emphasis supplied.)

beneficiaries cannot modify the terms of a trust and they cannot revise provisions of the trust instrument to suit their own desires. Bogart on Trusts (5th Ed.) § 45; 89 CJS 892, Trusts, § 87(d) and cits.

The clear words of the McKinnon deed created, not an implied trust, but an express trust. The express trust was to the "local church." The intention of the trustor is clear, the trustees are identifiable, the res is certain, and the cestui que trust was determined by the trust instrument. I know of no theory of the law that beneficiaries of a trust indenture, without specific authority, can change the entrustment and make it for the benefit of another.

The wishes and intent of the original trustor should be carried out and should not be modified by any unauthorized act of the trustees, the beneficiaries or the courts. This can be done without deciding whether the action of the beneficiaries made the local church a connectional church or whether it remains congregational. All entrustments do not fall in one or the other of these categories. The right of the trustor to create such a property interest was clearly recognized in the early case of Watson v. Jones, 80 U. S. (13 Wall.) 666.

A bare majority of this court prevails. A majority of the members of the local church lose all their property. Incredible!

I am authorized to state that Justice Jordan joins in this dissent.