A93A0740, A93A0741. CROCKER et al. v. STEVENS et al.
A93A0742. BIRD & ASSOCIATES v. STEVENS et al.
(435 SE2d 690)

BLACKBURN, Judge.

These companion appeals arose from a petition to dissolve the Conyers Community Church, which was a nonprofit corporation, and to dispose of the church's assets. The church was organized in 1976, and its membership, at its greatest, numbered 70 to 80. By late 1989, the membership had dwindled to approximately 23, and the church's board of trustees (which included Kenneth Crocker (the church's pastor), his son-in-law, and a third individual) decided to sell the church realty to a commercial buyer for $725,000.

From those proceeds, the church satisfied a first mortgage on the property of $164,070, a second mortgage of $156,616 owed to the pastor, and the closing costs of $75,418 ($29,000 of which was paid to the pastor, who also was a real estate broker and served as co-broker in the sale). The last church meeting took place on February 18, 1990, at which time the majority of members present approved as retirement benefits for the pastor: a lump sum gift of $100,000, and conveyance of the parsonage (after payment of the $34,038 encumbrance on it). According to Crocker and the church, church operating costs from the closing date until the last congregation, totaling $22,558, were also paid from the proceeds. The remainder of the sale proceeds was to be used to carry on the church's purpose through radio, tape, newsletter, and missionary ministry, with the pastor having control of those funds.

Subsequently, some of the church members commenced this action against Crocker and the church itself, seeking dissolution of the corporation, appointment of a receiver, an injunction against the defendants' disposing of the corporate assets, and proper disposition of those assets. The trial court appointed a receiver over some of the assets in question, and enjoined Crocker from disposing of the assets in his control. Crocker eventually asserted a counterclaim against one of the plaintiffs, Ray Stevens, for comparing him to Jim Bakker in a newspaper article.

Crocker and the church corporation moved for summary judgment, which was denied by the trial court, and then sought an interlocutory appeal with the Georgia Supreme Court. The Supreme Court, however, denied the application. The matter proceeded to trial, and resulted in a jury verdict, wherein the plaintiffs were

awarded $56,616.37 of the $156,616.37 second mortgage held by Crocker; the plaintiffs were awarded the $29,000 real estate commission claimed by Crocker; Crocker was awarded the parsonage and the $100,000 retirement gift; the plaintiffs were awarded the remaining church funds totaling $207,801.63, the church's personal property, and all the interest that had accrued on the church's funds while in the control of the receiver; and the plaintiffs were awarded $30,000 attorney fees and expenses of litigation against Crocker. The trial court directed a verdict against Crocker on his counterclaim for defamation, and denied the defendants' claim for attorney fees to be paid from the church funds.

Subsequent to the trial, the court denied the defendants' motion for j.n.o.v. and motion for new trial. It also dismissed Crocker's notice of appeal from the directed verdict in his counterclaim, because he had not filed a transcript timely. In Case No. A93A0740, Crocker appeals the trial court's direction of a verdict on the counterclaim in favor of Stevens. Case No. A93A0741 concerns the judgment entered on the jury's verdict and the dismissal of Crocker's notice of appeal on the counterclaim. Case No. A93A0742 involves the denial of attorney fees and litigation expenses incurred by the defendants.

1. Initially, we must address the issue of this court's jurisdiction to consider these appeals. OCGA § 14-3-219 provides that superior courts have jurisdiction over the dissolution of corporations and the liquidation of the corporate assets and affairs, and the trial court specifically instructed the jury on this Code section. In *Claire v. Rue de Paris*, 239 Ga. 191, 193 (236 SE2d 272) (1977), wherein a shareholder filed a petition for dissolution of a corporation and an injunction to prevent the corporate officers from disposing of corporate assets, the Supreme Court quoted the above Code section and noted that the plaintiff's complaint under that section "seeks equitable relief." In *Gervin v. Reddick*, 246 Ga. 56 (268 SE2d 657) (1980), involving an action by a majority of church members against the Board of Deacons and the church's pastor to enjoin depletion of church assets, the Supreme Court also held that courts of equity have jurisdiction over church disputes where property rights are involved. Further, a petition for dissolution of a corporation, injunction, and disposition of corporate assets may be likened to a complaint seeking dissolution of a partnership, injunction, and accounting, which has been held to be an equity action. *Williams v. Tritt*, 262 Ga. 173 (415 SE2d 285) (1992); *Bettis v. Leavitt*, 236 Ga. 213, 217 (223 SE2d 88) (1976).

In view of the above authorities, along with the fact that the Supreme Court did not transfer the previously-filed interlocutory appeal to the Court of Appeals, this court transferred these appeals to the Supreme Court by order dated March 10, 1993. However, on April 16, 1993, the Supreme Court ordered that these cases be returned to this

court, without specifying the basis for doing so.

2. Crocker and the church, however, contend that any civil court's exercise of jurisdiction over this church dispute is prohibited by the First Amendment to the United States Constitution. We disagree.

"[T]he First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment. Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property." *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U. S. 440, 449 (89 SC 601, 21 LE2d 658) (1969).

With regard to cases involving disputes over church property, the Georgia Supreme Court has previously distinguished between two types of church government, i.e., congregational and hierarchical. A congregational church is usually strictly independent of other ecclesiastical associations, while a hierarchical church is associated with other churches that share similar faith and doctrine and have a common ecclesiastical head. *Crumbley v. Solomon*, 243 Ga. 343 (254 SE2d 330) (1979). "If the church government is congregational, then a majority of its members control its decisions and local church property. If hierarchical, then we use 'neutral principles of law' to determine whether the local church or parent church has the right to control local property. Those 'neutral principles' are state statutes, corporate charters, relevant deeds, and the organizational constitutions of the denomination. [Cit.]" Id. See also *Jones v. Wolf*, 244 Ga. 388 (260 SE2d 84) (1979).

The instant case represents a hybrid of the above two forms of church government. It is clear that the church government cannot be categorized as congregational; although it had some elements of that form of governance, the church was organized as a nonprofit corporation, with articles of incorporation and by-laws. However, the church also was unconnected to any other churches with a common ruling convocation, and thus was not hierarchical. Nevertheless, as with hierarchical churches, the property dispute here was capable of resolution by reference to neutral principles of law, i.e., the applicable statutory provisions of the Georgia Nonprofit Corporation Code, without infringing upon any First Amendment values. In this regard, the trial court adhered to neutral principles by referring the jury to the church's articles of incorporation and by-laws and instructing the jury on the state corporate law, part of which provides that "[i]f religious doctrine governing the affairs of a corporation is inconsistent with the provisions of this chapter on the same subject, the religious doctrine

shall control to the extent required by the Constitution of the United States or the Constitution of this state or both." OCGA § 14-3-180. Contrary to the defendants' contention, it appears that the trial court ensured that First Amendment values were not jeopardized.

3. Crocker and the church contend that the plaintiffs lacked standing to bring this action because they did not represent a majority of the membership. In support of that contention, they rely upon OCGA § 14-5-43, which provides in part that "[t]he majority of those who adhere to its organization and doctrines represent a church," and *Heath v. Butler*, 213 Ga. 411, 412 (99 SE2d 131) (1957), in which the Supreme Court cited the predecessor of that statutory provision and held that "[a] minority of a church membership can not act for the church."

However, OCGA § 14-5-43 "properly is to be construed as being applicable only to churches having a congregational form of government." *Jones v. Wolf*, supra at 389. Inasmuch as the church government in this case cannot be categorized as congregational, as discussed above, OCGA § 14-5-43 and *Heath v. Butler*, supra, are inapposite.

"Courts are reluctant to interpose in questions affecting the management of the temporalities of a church; but, when property is devoted to a specific doctrine or purpose, the courts will prevent it from being diverted from the trust." OCGA § 14-5-45; *Dowdell v. Cherry*, 209 Ga. 849 (76 SE2d 499) (1953). Even where a church has a congregational form of governance, "[i]f the majority of the church depart from its organization and doctrines, they do not represent the church, and such majority can not divest the church property from the trust to which it has been devoted." *Tucker v. Paulk*, 148 Ga. 228, 229 (96 SE 339) (1918). Accordingly, under the circumstances presented by the instant case, particularly where the resolution of the property dispute strictly followed neutral principles of law, the plaintiffs had standing in this action alleging a diversion of the church property from the purpose for which the church and its assets had been devoted.

4. Crocker and the church also argue that the First Amendment precludes the involuntary receivership imposed on the church by the superior court. However, they neither cite authority for that proposition, nor explain how such an action violates the First Amendment.

Under OCGA § 14-3-219, the superior court has full power to liquidate the assets and affairs of a nonprofit corporation when it is established that the acts of the directors or those in control of the corporation are illegal or fraudulent, the assets are being misapplied or wasted, or where the corporation is unable to carry out its purposes. OCGA § 14-3-220 authorizes the superior court to issue injunctions or appoint a receiver as needed to preserve the corporate assets. Inas-

much as the church chose to incorporate under the Georgia Nonprofit Corporation Code, and appointment of a receiver is authorized under those codified neutral principles of law regarding liquidation of nonprofit corporations, we reject the contention that the First Amendment prohibited the involuntary receivership in this case.

5. Crocker and the church enumerate multiple errors in the trial court's instructions to the jury. Most of the jury charges about which they complain pertain to instructions patterned after portions of the Georgia Nonprofit Corporation Code. We find no error with regard to any of the jury charges.

The trial court instructed the jury about an implied trust resulting where one person obtains title to property by fraud, or where from the nature of the transaction it is manifest that it was the parties' intention that the person taking legal title should have no beneficial interest. Crocker and the church contend that the doctrine of implied trust may not be applied in church disputes under *Presbyterian Church v. Eastern Heights Presbyterian Church*, 225 Ga. 259 (167 SE2d 658) (1969).

In *Presbyterian Church*, the Supreme Court prohibited implication of a trust in a dispute over church property between a local church and the general church with which it was connected, where that implied trust was conditioned on the general church adhering to its tenets of faith and practice at the time of the local church's affiliation with it. Allowing such a condition would have resulted in the court determining ecclesiastical questions, contrary to the First Amendment to the United States Constitution. However, the Supreme Court specifically did not rule out creation of a trust on church property by other means, i.e., "by the deeds on the property, implied under the statutes of this State . . . , or required by the constitution of the general church." Id. at 260. The instant case does not involve the type of implied trust prohibited in *Presbyterian Church*.

Moreover, as pointed out by the plaintiffs, the jury charge on implied trust pertained to the allegations of Crocker having obtained the church property through his fraud and abuse of a confidential relationship, without reference to any ecclesiastical issues. The prohibition regarding implied trusts contained in *Presbyterian Church* thus is inappropriate in the instant case.

Crocker and the church also contend that the trial court erred in refusing to instruct the jury that when a nonprofit corporation's bylaws are inconsistent with the articles of incorporation, the articles govern. However, the trial court adequately covered that principle of law by charging that "each corporation also shall have the power to make and alter bylaws, not inconsistent with its articles of incorporation or with the laws of this state, for the administration and regulation of the affairs of the corporation," as provided in OCGA § 14-3-21

(b) (2). A jury charge need not be given in the exact language requested. *Swint v. Smith*, 204 Ga. App. 54 (418 SE2d 375) (1992).

Crocker and the church next contend that the trial court should have instructed the jury that it could not redetermine the membership of the board of trustees, because such issues were reserved to the church and not a secular authority. "Jurisdiction to determine who are the duly constituted trustees of the church organization rests with the ecclesiastical forum of the organization, and not with a court of equity. [Cit.]" *Smith v. Kelly*, 208 Ga. 233 (65 SE2d 795) (1951). However, although the jury was presented with the task of deciding whether Crocker had fraudulently manipulated the board of trustees, it was not necessary for the jury to redetermine the board's membership and there was no showing that the jury made such a determination.

Crocker and the church assert that the trial court erred in refusing to give their requested charge regarding membership of the church corporation and voting rights of members, based on OCGA §§ 14-3-80 and 14-3-82, thereby conferring upon the jury an unfettered discretion to determine the membership in the corporation. The record, however, reveals that the trial court did instruct the jury on those statutory principles contained in OCGA § 14-3-80 et seq. As noted above, it also was unnecessary for the trial court to use the exact language requested in making the jury charge. *Swint v. Smith*, supra.

Citing a general treatise and one Pennsylvania case as authority, Crocker and the church argue that the trial court should have instructed the jury that objections not made at the time a vote is taken in a membership corporation, as to the membership entitled to vote or to the matters being voted upon, are waived. OCGA § 14-3-81 provides that attendance of a member at a meeting, either in person or by proxy, shall constitute a waiver of notice and waiver of any objections to the place and time of the meeting and the manner in which it has been called, and the trial court so instructed the jury. However, nothing in the Georgia Nonprofit Corporation Code provides for a waiver of objections to the matters voted upon. Moreover, such a waiver would be inapplicable where the gravamen of the plaintiffs' complaint against Crocker is that the membership was not fully informed of all the circumstances behind the sale and disposition of the church property when it "approved" the proposed disposition.

6. The verdict form submitted to the jury first dealt with specific items to be awarded, and then authorized the jury to make a determination of the disposition of the balance of the proceeds from the sale of the church. After it began its deliberations, the jury inquired with the trial court whether it could simply indicate a general award of the remainder of those funds, rather than specify a dollar amount of that

balance. Counsel for the plaintiffs and the defendants consented to allowing the jury to substitute for a dollar amount the words "the remainder," and having the trial court determine the amount of the remainder if the parties could not agree upon such.

The trial court found that the remainder of the sale proceeds consisted of $207,000, along with the tangible personal property of the church and all interest accrued on the funds in the hands of the receiver. Crocker and the church now contend that the trial court failed to deduct church expenses that were incurred between the closing date of the sale and the last congregational meeting, and that the trial court erred in not allowing them to present additional evidence regarding such expenses.

With regard to the latter contention, the decision to reopen the evidence in a case lies within the sound discretion of the trial court, and will not be disturbed absent a showing of an abuse of that discretion. *Williams v. State*, 205 Ga. App. 445 (2) (422 SE2d 309) (1992). In the instant case, where the parties agreed, after the evidence was closed, to having the jury award "the remainder" of the sale proceeds and the trial court resolve any dispute over the actual dollar amount, we find no abuse of discretion in the trial court's refusal to reopen the evidence.

With regard to the alleged miscalculation by the trial court of the remainder of the sale proceeds, the amount found by the trial court was within the range of the evidence presented during the trial. Where a verdict is within the range of the evidence adduced on the issue, and the award is not so excessive as to indicate bias or prejudice on the part of the factfinder, this court will not disturb the verdict. *Moultrie Farm Center v. Sparkman*, 171 Ga. App. 736 (320 SE2d 863) (1984).

7. The trial court also awarded the plaintiffs all of the interest that had accrued on the funds held by the receiver, as part of the remainder of the church assets. Throughout the litigation, Crocker remained in control of the parsonage, the $100,000 gift, and the full second mortgage amount. The plaintiffs were ultimately determined to be entitled to most of the funds held by the receiver throughout the litigation, but Crocker was awarded a portion of those funds.

Crocker contends that the trial court erred in awarding the plaintiffs all of the interest accruing on the funds held by the receiver, and we agree. Interest earned on court registry accounts usually is allocated proportionately to those who are ultimately determined to be owners of the principal. *Odyssey Stevedoring Corp. v. "Celtic Venture,"* 817 F2d 709, 711 (11th Cir. 1987). Similarly, the interest earned on funds held by a receiver should be allocated proportionately to the owners of the principal. Accordingly, Crocker was entitled to recover his proportionate share of the interest earned on the funds

held by the receiver.

8. The plaintiffs asserted a claim for attorney fees under OCGA § 13-6-11, and the specific bases for that claim consisted of stubborn litigiousness and bad faith (in the form of fraud) on the part of the defendants. Because the plaintiffs recovered less on their primary claim than they sought, Crocker contends that the plaintiffs' award for attorney fees was unauthorized. We disagree.

Great disparity between the damages sought and those actually awarded in a verdict may defeat an award of attorney fees based on stubborn litigiousness under OCGA § 13-6-11, but not an award that is based on bad faith. *Ga.-Carolina Brick &c. Co. v. Brown*, 153 Ga. App. 747 (266 SE2d 531) (1980). Where there is some evidence supporting a finding of bad faith, an award of attorney fees on that basis must be affirmed. *Harrell v. Gomez*, 174 Ga. App. 8 (6) (329 SE2d 302) (1985). In the instant case, the evidence showing Crocker's lack of disclosure of information regarding his personal benefit from the sale of the church, and his structuring of the church's board of directors, supplied that evidence. Further, contrary to Crocker's suggestion, the award of attorney fees is not apportioned to only those attorney fees attributable to the claims on which the plaintiffs prevailed. "In our view, a party acting in bad faith should pay the full price for losing. [Cit.]" *McDonald v. Winn*, 194 Ga. App. 459, 461 (390 SE2d 890) (1990).

9. The defendants contend that the trial court erred in refusing to award payment of their attorney fees and litigation expenses from the monies awarded to the plaintiffs.

OCGA § 14-3-220 (d) provides that in corporate liquidations, the superior court "shall have power to allow, from time to time, as expenses of the liquidation, compensation to the receiver or receivers and to attorneys in the proceedings and to direct the payment thereof out of the assets of the corporation or the proceeds of any sale or disposition of such assets." Under this Code section, it was within the discretion of the trial court to award attorney fees and litigation expenses incurred by the corporation in its defense of the liquidation proceeding brought by the plaintiffs. Considering the amount of the compensation awarded by the jury to Crocker and the degree to which payment of the church's expenses of litigation from the remainder would frustrate the charitable and religious purposes for which the church funds were intended under the corporate charter, the trial court did not abuse its discretion in refusing to award attorney fees and expenses of litigation incurred by the corporation.

However, with regard to Crocker's attorney fees and litigation expenses associated with the liquidation proceeding, we reach a different conclusion. OCGA § 14-2-852 (applicable to nonprofit corporations pursuant to OCGA § 14-3-110) provides that "[u]nless limited

by its articles of incorporation, to the extent that a director has been successful, on the merits or otherwise, in the defense of any proceeding to which he was a party, or in defense of any claim, issue, or matter therein, because he is or was a director of the corporation, the corporation shall indemnify the director against reasonable expenses incurred by him in connection therewith." This Code section endorses the approach towards indemnification expressed in *Merritt-Chapman & Scott Corp. v. Wolfson,* 321 A2d 138 (Del. 1974), i.e., a defendant director is entitled to partial mandatory indemnification if he succeeds on some but not all claims or charges against him.

The title of this Code section is "Mandatory indemnification," and by its express terms the statute leaves no room for discretion. Indemnification of a director is required where the director prevails on a claim in connection with his position as director, unless limited by the articles of incorporation. In the instant case, the articles contained no limitation in this regard, and Crocker thus was entitled to mandatory indemnification of the reasonable expenses incurred in the defense of the liquidation proceeding, pursuant to OCGA § 14-2-852. However, the indemnification must be proportionate to the extent that Crocker was successful in the claims against him.

The plaintiffs argue that Crocker was not entitled to mandatory indemnification under OCGA § 14-2-852 because their action against him was unrelated to his position as director of the church corporation. However, in their amended complaint, the plaintiffs specifically alleged that Crocker breached his fiduciary duty as director of the church corporation, and that allegation actually constituted the gist of their claim against Crocker. We also reject the plaintiffs' contention that inasmuch as OCGA § 14-2-852 provides for indemnification out of the corporation's funds, such relief was unavailable because the verdict already disposed of all of the corporation's assets. Under OCGA § 14-3-220 (c) (1), in a liquidation proceeding, the assets of a corporation or the proceeds resulting from a sale, conveyance, or other disposition must be applied to the liabilities and obligations of the corporation. In short, the corporation's liabilities, one of which would be mandatory indemnification to Crocker, would have priority in the distribution of the corporate assets.

10. After commencement of this action against Crocker and the church, one of the plaintiffs, Ray Stevens, was quoted in a newspaper as saying: "This is sort of like Jim Bakker on a smaller scale." Crocker subsequently filed a counterclaim against Stevens alleging defamation. The trial court, however, directed a verdict in favor of Stevens on this counterclaim. Further, after Crocker filed a notice of appeal but failed to file a transcript timely, the trial court dismissed the notice of appeal.

The trial court directed the verdict on the counterclaim on June

4, 1992; after an extension of time to file, notice of appeal was filed on August 5, 1992. The entire transcript in the matter was ordered on July 2, 1992 although the portion of the trial transcript pertaining to Crocker's counterclaim consisted of only 78 pages. At that time, the court reporter advised Crocker that the entire transcript could be prepared in about two months, but a cost deposit of $2,500 was required. The court reporter immediately began working on the transcript, and within three weeks had completed nine hundred pages of the approximately two thousand-page transcript.

On July 15, 1992, the court reporter called counsel for Crocker and the church to inquire about the $2,500 deposit which still had not been paid, and she was informed of some uncertainty over whether an appeal would be filed. On July 16, 1992, Crocker filed a motion for extension of time for filing a transcript. On August 10, 1992, Crocker paid $1,000 towards the cost of the transcript, but again expressed some uncertainty about proceeding with an appeal. Finally, on September 15, 1992, Crocker sent $1,360.50 to the clerk of court for appeal costs, which was handed over to the court reporter to count towards the $2,500 deposit, and work on the transcript resumed. Ultimately, the transcript was filed on December 8, 1992, three months late.

OCGA § 5-6-48 (c) provides, in part, that "the trial court may, after notice and opportunity for hearing, order that the appeal be dismissed where there has been an unreasonable delay in the filing of the transcript and it is shown that the delay was inexcusable and was caused by such party." In *Baker v. Southern R. Co.*, 260 Ga. 115, 116 (390 SE2d 576) (1990), the Supreme Court reiterated those showings required under that Code section, and emphasized that "[t]he failure to apply for an extension does not automatically convert the delay into one which fits all of the conditions necessary to vest the trial court with the discretion to dismiss the appeal."

In the instant case, the notice of appeal was not dismissed because of the failure to apply an extension timely. The evidence showed that the reason for the delay in the preparation of the transcript was Crocker's failure to pay the required $2,500 deposit, in conjunction with his expressed uncertainty about proceeding with an appeal in the matter. Although the trial court dismissed the notice of appeal on November 30, 1992, the transcript was not filed until December 8, 1992, making the total length of the delay about three months.

"The trial court has a very broad discretion in deciding whether or not to dismiss for delay. [Cits.]" *Barmore v. Himebaugh*, 205 Ga. App. 381, 382 (422 SE2d 255) (1992); see also *A. Roberts Corp. v. Roberts*, 207 Ga. App. 663 (428 SE2d 671) (1993). Under the circumstances presented in the instant case, we find no abuse of discretion

in the trial court's dismissal of the notice of appeal from the directed verdict on the counterclaim, on the grounds that the delay was inexcusable, unreasonable, and caused by Crocker's failure to pay the required deposit for preparation of the transcript.

11. In view of our holding in Division 10 above, Crocker's appeal on the merits of the trial court's direction of a verdict on the counterclaim is dismissed as moot.

*Judgment affirmed in part, reversed in part in . Case No. A93A0741 and in Case No. A93A0742. Case No. A93A0740 dismissed. McMurray, P. J., and Johnson, J., concur.*

DECIDED AUGUST 26, 1993 —
RECONSIDERATION DENIED SEPTEMBER 13, 1993 ▇▇▇▇▇▇▇

*Bird & Associates, Wendell R. Bird, David J. Myers*, for appellants.

*Strauss & Walker, John T. Strauss, Lance & Associates, Forrest J. Lance*, for appellees.