A95A1791. KIDIST MARIAM ETHIOPIAN ORTHODOX TAWAHEDO CHURCH, INC. v. KIDIST MARIAM ETHIOPIAN ORTHODOX TAWAHEDO CHURCH, INC.
(465 SE2d 491)

McMURRAY, Presiding Judge.

Kidist Mariam Ethiopian Orthodox Tawahedo Church, Inc. a/k/a Atlanta Group ("Atlanta Group") and Kidist Mariam Ethiopian Orthodox Tawahedo Church, Inc. a/k/a Decatur Group ("Decatur Group") assert opposing claims to a $45,000 certificate of deposit that

is the subject of an interpleader action filed by Wachovia Bank of Georgia, N.A. ("Wachovia"). Both the Atlanta Group and the Decatur Group claim control of the corporation which owns the certificate of deposit, the Kidist Mariam Ethiopian Orthodox Tawahedo Church, Inc. ("the corporation" or "the Kidist Mariam Church").

The Kidist Mariam Church was established under Georgia's Non-profit Corporation Code, OCGA § 14-3-101 et seq. and is dedicated to the religious, spiritual and liturgical precepts of a religious body known as the Ethiopian Orthodox Tawahedo Church ("EOTC").[1] However, the corporation's articles of incorporation reserve control of the "internal affairs of the corporation . . ." and its bylaws provide "the Kidist Mariam Church with autonomy, [and] reflect [the corporation's limited] acceptance of the final authority of the Archbishop and, under him, of the clergy, in matters relating to religious faith and the observance of religious practice and church liturgy."

After a bench trial, the trial court entered an order which provides, in pertinent part, as follows: "In January, 1993, a Board of Directors was elected for the [Kidist Mariam Church] pursuant to the articles of incorporation and the by-laws thereof. . . . In mid-October, 1993, the said Board of Directors, after a vote by the congregation, notified the Priest, Rev. Musie [H]aregewoyn, that his services were no longer required and that he would not be permitted to conduct services at the church in the future. . . . Within a few days after this action by the Board of Directors, the Rev. Haregewoyn notified the Archbishop, Abune Matthias, in Washington, DC, of this action and thereafter the Rev. Haregewoyn, with the approval of the said Archbishop, notified the said Board of Directors that they were no longer the Board of Directors of the Corporation. . . . Thereafter, Rev. Haregewoyn and certain of his followers who had previously been at the Kidist Mariam Church, commenced having services at a new location in the City of Atlanta, Georgia. . . . This Group is called herein the 'Atlanta Group.' . . . Thereafter, the 'Atlanta Group' purported to elect a new Board of Directors for the Kidist Mariam Church, to replace the Board of Directors which had purportedly been disbanded by Rev. Haregewoyn upon instructions by the Archbishop. . . . Thereafter, the Board of Directors which had been elected in January, 1993, refused to step down from their positions, and continued to serve as a Board of Directors, taking such actions as the filing of the corporate tax return for 1993, the filing of the annual report with the Secretary of State of the State of Georgia, and the approval of the purchase of real estate, in particular a church building

---

[1] The EOTC is headquartered in Addis Ababa, Ethiopia, and is led by a Patriarch and the Holy Synod. The Patriarch and the Holy Synod exercise authority over bishops, the bishops exercise authority over local congregations and local congregations are led by priests.

located in Decatur, Georgia. This group is herein referred to as the 'Decatur Group.' . . .

"The issue before this Court is the question of which Board of Directors is the true and only Board of Directors of the corporation. . . .

"This Court has examined the laws of the State of Georgia pertinent hereto, the charter of the corporation, the by-laws of the corporation, and the other relevant materials and testimony offered by both sides in this case. . . . Upon due consideration thereof, and applying neutral principles of law, and avoiding thereby questions regarding the 'establishment of religion', this Court finds that the Kidist Mariam [Church], by its charter and its by-laws, was established as an autonomous congregation with respect to matters of administration and fiscal matters related to this case, and that the Archbishop did not have the legal authority to disband the Board of Directors which was elected in January, 1993. . . . The Court finds further that the purported election of a new Board of Directors by the Atlanta Group in December, 1993, was not in conformity with the charter and the by-laws of the corporation. . . . The Court further finds that the Board of Directors which was elected by the Decatur Group to replace the 1993 Board of Directors in May, 1994, which took office in June, 1994, is now the true and only Board of Directors of the Corporation. . . .

"WHEREFORE, IT IS ORDERED: . . . (a) That the 'Decatur Group' is the group which should receive the certificate of deposit aforesaid; and . . . (b) That Wachovia . . . is hereby ORDERED to deliver the said certificate of deposit into the possession of [the] attorney for the Decatur Group, upon presentation of a certified copy of this Order." This appeal followed. *Held*:

1. The Atlanta Group contends the trial court was prohibited by the First Amendment of the United States Constitution, applicable via the Fourteenth Amendment, from exercising judicial authority in this interpleader action. See *McDonnell v. Episcopal Diocese of Ga.*, 191 Ga. App. 174 (381 SE2d 126). We do not agree.

" '(T)he First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment. Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property.' *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U. S. 440, 449 (89 SC 601, 21 LE2d 658) (1969).

"With regard to cases involving disputes over church property, the Georgia Supreme Court has previously distinguished between two

types of church government, i.e., congregational and hierarchical. A congregational church is usually strictly independent of other ecclesiastical associations, while a hierarchical church is associated with other churches that share similar faith and doctrine and have a common ecclesiastical head. *Crumbley v. Solomon*, 243 Ga. 343 (254 SE2d 330) (1979). 'If the church government is congregational, then a majority of its members control its decisions and local church property. If hierarchical, then we use "neutral principles of law" to determine whether the local church or parent church has the right to control local property. Those "neutral principles" are state statutes, corporate charters, relevant deeds, and the organizational constitutions of the denomination. (Cit.)' Id. See also *Jones v. Wolf*, 244 Ga. 388 (260 SE2d 84) (1979)." *Crocker v. Stevens*, 210 Ga. App. 231, 233 (2) (435 SE2d 690).

In the case sub judice, the Kidist Mariam Church appears to be a hybrid of the above two forms of church government. While the corporation submits to EOTC's hierarchical dictates regarding religious, spiritual and liturgical matters, it reserves control of the "internal affairs of the corporation . . ." and provides "the Kidist Mariam Church with autonomy. . . ." Consequently, just as the corporation's Board of Directors is prohibited from deviating from the EOTC's religious, spiritual and liturgical directives, EOTC is prohibited from interfering with the internal affairs of the corporation, including replacement of the Board of Directors. Under these circumstances, it is apparent that the property dispute in the case sub judice was capable of resolution by reference to neutral principles of law, i.e., the applicable provisions of the corporation's articles of incorporation and bylaws as well as the Georgia Nonprofit Corporation Code, without infringing upon any First Amendment values.

Accordingly, the trial court was not prohibited by the First Amendment from exercising judicial authority over competing claims for ownership of the $45,000 certificate of deposit. *Crocker v. Stevens*, 210 Ga. App. 231, 233 (2), supra.

2. The Atlanta Group contends in its second enumeration of error that "[t]he trial court erroneously concluded based on the Bylaws that the Kidist Mariam Church is independent from [EOTC] and that Archbishop Matthias had no authority to expel individuals from membership in the [Kidist Mariam Church], which necessarily would disqualify those individuals from serving on the Board of Directors." This contention is without merit. Any error in the trial court's conclusion that Archbishop Matthias did not have the legal authority to disband the Board of Directors elected in 1993 does not lead to the conclusion that the Atlanta Group is the duly-constituted Board for the corporation and, therefore, the lawful owner of church property.

The bylaws of the Kidist Mariam Church expressly provide for

the corporation's autonomy while specifying that the Kidist Mariam Church must yield to EOTC's hierarchical dictates only with regard to religious, spiritual and liturgical matters. Thus, even assuming Archbishop Matthias was authorized in declaring the removal of the corporation's Board of Directors because of their decision to remove Rev. Haregewoyn as priest of the Kidist Mariam Church, neither the Archbishop nor the Atlanta Group had authority to appoint the corporation's Board of Directors. This is controlled by Article 8 (3) of the corporation's bylaws, which provides that "Board members shall be elected by secret ballot." Consequently, since the corporation duly elected a Board of Directors in 1994 to take the place of the Board of Directors Archbishop Matthias found objectional (presumably on religious, spiritual or liturgical grounds), we find no harm in the trial court's finding that "the Archbishop did not have the legal authority to disband the Board of Directors which was elected in January, 1993." Compare *McDonnell v. Episcopal Diocese of Ga.*, 191 Ga. App. 174, 176-177, supra.

The trial court did not err in finding that the Decatur Group is entitled to possession of the $45,000 certificate of deposit.

*Judgment affirmed. Andrews and Blackburn, JJ., concur.*

DECIDED NOVEMBER 29, 1995 —
RECONSIDERATION DENIED DECEMBER 14, 1995 —

*Hughes & Kaplan, Robert W. Hughes, Jr., Barry E. Kaplan,* for appellant.

*Arrington & Hollowell, Gary W. Diamond, Sidney L. Moore, Jr.,* for appellee.