## A99A2391. JAY v. CHRISTIAN METHODIST EPISCOPAL CHURCH.

### (531 SE2d 369)

SMITH, Judge.

Dr. Lewis W. Jay, a pastor in the Christian Methodist Episcopal Church, filed suit against his church, asserting that a certain bishop failed to comply with the church's internal rules when transferring him to another location. Dr. Jay alleged that Bishop Othal H. Lakey transferred him without providing 60 days advance notice and without consulting with him 30 days before the transfer. Dr. Jay claimed that Bishop Lakey's actions violated certain express rules in the church's Book of Discipline. He sought damages for the church's breach of an alleged employment contract as well as attorney fees and litigation costs.

The trial court granted the church's motion to dismiss, finding that subject matter jurisdiction was lacking because the underlying issues were ecclesiastical matters. We agree and affirm.

1. Dr. Jay contends the trial court erred in dismissing his complaint because the issues are nonecclesiastic in nature and concern property rights to salary and benefits.

"[C]ivil courts have no jurisdiction to inquire into and to control the acts of the governing authority of a religious organization undertaken with reference to its internal affairs." *Anderson v. Dowd*, 268 Ga. 146, 147 (1) (485 SE2d 764) (1997). In order to safeguard the constitutional guarantee of freedom of religion, religious bodies must have the power "to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." (Citations and punctuation omitted.) Id. See *Tucker v. Paulk*, 148 Ga. 228 (2) (96 SE 339) (1918).

In cases involving disputes over church property, we must distinguish between two types of church government: congregational and hierarchical. *Kidist Mariam Ethiopian &c. Church v. Kidist Mariam Ethiopian &c. Church*, 219 Ga. App. 470, 472-473 (1) (465 SE2d 491) (1995). While a congregational church is usually strictly independent of other ecclesiastical associations, a hierarchical church is associated with other churches that share similar faith and doctrine and have a common ecclesiastical head. Id. at 473.

As a matter of constitutional law, a hierarchical religious organization must be permitted to establish the rules and regulations by which it is governed. *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U. S. 696, 724 (IV) (96 SC 2372, 49 LE2d 151) (1976).

*First Born Church &c. v. Hill*, 267 Ga. 633, 634 (1) (481 SE2d 221) (1997).

Here, it is not disputed that the organization and structure of the Christian Methodist Episcopal Church are hierarchical. The central issue, moreover, is ecclesiastic in nature: A pastor is alleging that his bishop transferred him from one church to another church within the Sixth Episcopal District without complying with two rules set forth in the church's Book of Discipline. The very essence of Dr. Jay's complaint is that the bishop acted arbitrarily in exercising his authority within the church when he transferred Dr. Jay without proper notice and consultation as required by the Book of Discipline. Plainly, by instituting this lawsuit, Dr. Jay sought to contest his supervising bishop's right to manage and control the internal affairs of the church. But as Dr. Jay concedes, the church provides for internal review of violations of the Book of Discipline. It is the church's judicial council that exercises "appellate jurisdiction to review decisions of a Bishop," and "render[s] declaratory judgments as to the meaning, application and effect of any paragraph of the Discipline." Notwithstanding this level of appellate review, it is undisputed that the bishop for a district has final authority in decisions relating to the transfer and termination of pastors because the judicial council has no ability to enforce its rulings.

Despite Dr. Jay's contention that the underlying issues are nonecclesiastic, the crux of this complaint concerns an internal church matter: a decision by a bishop to assign Dr. Jay to a different church. See, e.g., *McDonnell v. Episcopal Diocese of Ga.*, 191 Ga. App. 174, 176 (381 SE2d 126) (1989) (physical precedent only) (bishop's decision to terminate minister constituted an ecclesiastical matter over which the trial court lacked jurisdiction). This is not a property dispute that can be resolved using " 'neutral principles of law' " — a permissible category of judicial inquiry. *Leopold v. St. Paul's Greek Orthodox Church*, 235 Ga. App. 188, 193 (509 SE2d 121) (1998). Neutral principles include state statutes, corporate charters, relevant deeds, and organizational constitutions of the denomination. *Kidist Mariam*, supra at 473. But Dr. Jay's complaint that his bishop violated certain rules of the Book of Discipline cannot be resolved by the application of neutral principles of law. Compare *Crocker v. Stevens*, 210 Ga. App. 231, 234 (3) (435 SE2d 690) (1993) (division of disputed property upon dissolution of church not an ecclesiastical matter); see also *First Born Church &c. v. Bank South*, 221 Ga. App. 739 (472 SE2d 469) (1996).

Dr. Jay's reliance on *Hickman v. Booker*, 231 Ga. 129 (200 SE2d 279) (1973) is misplaced. In *Hickman*, unlike here, the issue was whether the defendant bishop and elder violated a court order, prohibiting them from taking any action against the pastor of a church until further order of the court. Id. at 130. Here, as in *Bledsoe v. Morningside Baptist Church*, 232 Ga. App. 122, 124 (501 SE2d 292)

(1998), the issue of compensation or purported reduction in income is only peripheral to the main issue — whether the bishop had a right to transfer a pastor, Dr. Jay, to another church within the district. The trial court correctly determined that subject matter jurisdiction was lacking. *Anderson*, supra at 147 (1).

The constitutional guarantee of freedom of religion includes the power of religious bodies to decide for themselves, free from interference by the state, matters of church government as well as matters of faith and doctrine. *First Born Church &c. v. Hill*, supra at 634 (1). Here, any judicial interference with the bishop's decision would involve an impermissible intrusion into religious affairs violative of the First Amendment of the United States Constitution, applicable to the states by the Fourteenth Amendment. See *Leopold*, supra at 193. This we cannot do. *Anderson*, supra at 147 (1).

2. Because the underlying claims are matters construing and applying internal church rules, Dr. Jay's contention that his claims were not barred by the First and Fourteenth Amendments is without merit.

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED MARCH 16, 2000.

*Bird & Associates, Jeffrey L. Pombert*, for appellant.
*Arrington & Hollowell, Stanley E. Foster, Mark W. Wortham*, for appellee.