A98A0664. UNITED BAPTIST CHURCH, INC. et al. v. HOLMES.
(500 SE2d 653)

ELDRIDGE, Judge.

The underlying ecclesiastical or theological dispute between Rev. Kenneth R. Holmes, plaintiff-appellee, and United Baptist Church, Inc. and Rev. William H. Sperry, defendants-appellants, involved the termination of plaintiff's ministry, excommunication from membership, the membership of United Baptist Church, church authority, and the internal governing procedures. Plaintiff has repeatedly sought to entangle the courts in his personal crusade.[1]

The courts of Georgia under the First Amendment of the Constitution of the United States and Art. I, Sec. I, Par. IV of the 1983 Constitution of Georgia are prohibited from determining issues of expulsion of members, pastors, and the internal procedures of a religious entity, *Anderson v. Dowd*, 268 Ga. 146, 147 (485 SE2d 764) (1997), because "[i]nextricably entangled is whether the priest's performance

---

[10] *Miller v. State*, 260 Ga. 191, 194 (6) (391 SE2d 642) (1990).
[1] As to related litigation and issues in this case decided adversely to plaintiff, see *Anderson v. Dowd*, 268 Ga. 146 (485 SE2d 764) (1997); *Achor Center v. Holmes*, 219 Ga. App. 399 (465 SE2d 451) (1995).

of his duties as a priest met the requirements of his church as measured by ecclesiastical concerns." *McDonnell v. Episcopal Diocese of Ga.*, 191 Ga. App. 174, 177 (381 SE2d 126) (1989); see also *Serbian Eastern Orthodox Diocese v. Milivojevich*, 426 U. S. 696 (96 SC 2372, 49 LE2d 151) (1976); *Crowder v. Southern Baptist Convention*, 828 F2d 718 (11th Cir. 1987); *Monahan v. Sims*, 163 Ga. App. 354, 359 (2) (294 SE2d 548) (1982). Likewise, "the validity of the expulsion of the [plaintiff] as [a member] of the church . . . grow[s] out of a controversy relating to the faith, teaching, doctrine, and discipline of the church"; therefore, courts are prohibited from inquiring into expulsion of members of a religious entity. *Stewart v. Jarriel*, 206 Ga. 855, 856 (6) (59 SE2d 368) (1950); see also *Knowles v. White*, 199 Ga. 772 (35 SE2d 451) (1945); *McCluskey v. Rakestraw*, 164 Ga. 30 (137 SE 394) (1927); *Tucker v. Paulk*, 148 Ga. 228 (96 SE 339) (1918). Thus, the propriety of the termination of plaintiff's pastorate, his expulsion from membership in United Baptist Church, and internal procedures, such as quorums and determination of membership in this church, are religious matters that the court shall not question, and any church action to bar him from the premises of the church are beyond judicial review. Such matters of faith, even when brought low to a secular plane, are not subject to judicial inquiry, since plaintiff's property rights were not involved, and such prior action was a fait accompli as of May 2, 1993, when Rev. Holmes was terminated as pastor of United Baptist Church. *Anderson v. Dowd*, supra at 148.

United Baptist Church sold the subject property, including the church and offices, to Achor Center, Inc., for a homeless ministry and retained a right to a priority use of the sanctuary and offices for worship at certain times each week. Thus, United Baptist Church had a right of use for specific worship purposes, which were subject to the superior ownership rights of Achor Center and subject to its regulation. Achor Center had a property right which allowed it to define or to limit who was permitted to use the premises for worship as United Baptist Church. Achor Center, as early as January 15, 1993, in the presence of a police officer, warned the plaintiff not to come into the women's dormitory, but the plaintiff told the officer that it was a contract dispute and that he had a right to go there on church-related matters. This was the underlying reason Achor Center wanted the plaintiff off its property.

After the plaintiff had been terminated as pastor and expelled from membership on May 2, 1993, from United Baptist Church, and despite notice not to return from both United Baptist Church and Achor Center, plaintiff wilfully defied such warning notice and returned on June 13, 1993, to attempt to hold worship services in the church portion of the property.

The plaintiff did not consider his termination and expulsion

valid. He publicly stated that he would fight any attempt to exclude him and sought to conduct worship services as usual, because he considered himself still the pastor of the noon service. His continuous litigation was a self-fulfilling prophecy.

Joyce Dorsey, Achor Center's chair, was present at the request of United Baptist Church on June 13, 1993, and she suggested that United Baptist Church have the plaintiff expelled by the off-duty police officer hired by United Baptist Church to keep the plaintiff away, because she had told plaintiff on May 2, 1993, that he would be dealt with as a trespasser if he returned to the property. Dorsey told the officer that the plaintiff had been previously warned by her to stay away from the property. Achor Center had instructed United Baptist Church to remove the sign in front of the church with the plaintiff's name on it, and an Achor Center employee was removing the sign on June 11, 1993, when the plaintiff stopped him and called the police.

Plaintiff in his affidavit made this admission in judicio as to the May 2, 1993 conference: "the Chairperson of the Board of Director's of the Achor Center, Inc., Mrs. Joyce Dorsey, announced that Achor, as [the owner] of the property, 'intend[ed] to exercise their legal authority to extricate Rev. Holmes from the grounds, including the premises being utilized by United Baptist Church.' " Plaintiff further admitted in judicio in his affidavit that "[a]fter receiving the letter dated May 14, 1993 from Mr. William S. Rhodes, I immediately called him. I asked him who gave him the authority to write the letter. . . . (letter attached as Exhibit 'B')." The letter read in part: "Any rights you may have had relating to United Baptist Church, Inc., were terminated on May 2, 1993. This letter is written on behalf of United Baptist Church, Inc., demanding that you no later than 12:00 noon on Thursday [May] 20, 1993, remove all possessions you have in the premises of United Baptist Church, Inc., and that you do not enter the premises of United Baptist Church, Inc., after that time as you will be trespassing." The plaintiff also stated that on June 11, 1993, the defendants sought to have him arrested for criminal trespass on the premises but that the police from Zone 3 refused to do so. On Friday, June 11, 1993, Dorsey told Officer Smith in the plaintiff's presence that: "we are in the process of having Reverend Holmes evicted." The plaintiff in his deposition testified under oath that: "[The off-duty officer] turned and asked Joyce Dorsey and Reverend Sperry, and they both informed him that I had been given a criminal trespass warning."

On June 13, 1993, the deacons and Rev. Sperry indicated that the plaintiff had to leave, and the plaintiff refused to do so. Dorsey answered the questions asked by the officers about the ownership, rights of use, and notice to the plaintiff. United Baptist Church sum-

moned the Zone 3 police at the request of the plaintiff. The agents of United Baptist Church complained of the plaintiff's trespass with notice and asked for the plaintiff's arrest for trespassing. Before plaintiff was arrested, Rev. Sperry told the investigating officer in the presence of the plaintiff that the plaintiff had received notice not to trespass. In plaintiff's own testimony, he stated: "[Dorsey and Sperry] both informed [the arresting officer] that I had been given a criminal trespass warning." Plaintiff did not testify that Rev. Sperry said that he had given the warning to the plaintiff; Rev. Sperry stated only that the plaintiff had received a warning notice. However, at the probable cause hearing, Rev. Sperry was asked by plaintiff's counsel what the plaintiff was told, either by him or the church, about returning; he replied, "Nothing, we didn't tell him about returning." He was not asked about Dorsey's warning; he only stated that the church provided no warning about returning.

The plaintiff was arrested. Subsequently, plaintiff brought separate actions for the tort of malicious prosecution against both the defendants and Achor Center. The defendants moved for summary judgment, which was denied by the trial court, resulting in this discretionary appeal. *Held*:

1. The defendants' first enumeration of error is that the trial court erred in finding that they did not have probable cause to have the plaintiff arrested for criminal trespass and denying their motion for summary judgment. We agree.

Whether or not the May 2, 1993 meeting had a properly constituted quorum, whether the plaintiff was properly expelled and excluded from membership, and whether Rhodes had proper authority to write the plaintiff the May 14, 1993 letter are ecclesiastical matters into which the courts cannot inquire, as a well-settled constitutional matter. Thus, the validity and authority of the notice of Dorsey to the plaintiff and of the notice of Rhodes by the May 14 letter are not subject to inquiry. These notices warned the plaintiff not to come on the premises of Achor Center or United Baptist Church. Such notices satisfied OCGA § 16-7-21 (b) (2) and (3).

Plaintiff was both forbidden to enter under OCGA § 16-7-21 (b) (2) at the May 2 conference by Dorsey's warning and by the May 14 letter from Rhodes. Plaintiff was told to depart the premises on June 11 and again on June 13 pursuant to OCGA § 16-7-21 (b) (3). Although contesting their validity, plaintiff admits in judicio that he received all these notices. Therefore, the defendants had probable cause to have him arrested for criminal trespass on June 13, 1993, whether or not they personally gave plaintiff the warning notices, because the arrest was made after plaintiff had more than sufficient warning notice given by agents for Achor Center and United Baptist Church, prior to June 13, 1993, as well as other indications confirm-

ing such warnings, such as the attempted removal of the sign on June 11; Dorsey's statements of that date to the police; and the failed effort to have the plaintiff arrested on that date for trespass.

Further, it is a gross mischaracterization for plaintiff to state that the defendant denied at the probable cause hearing that plaintiff had been given notice; he was never asked that question by plaintiff's counsel. Defendant Sperry did not deny at the probable cause hearing that plaintiff had notice not to return or that he knew that plaintiff had such notice not to return. Rev. Sperry answered the very limited question put to him by the plaintiff's lawyer, i.e., that neither he nor United Baptist Church on May 2, 1993, gave a warning to the plaintiff not to return. This was true, because they had not; however, others had given such warning. *Dorsey gave the warning notice on May 2*, and Rhodes gave written notice on May 14, which even plaintiff does not dispute. Both the trial court in this case and the judge at the probable cause hearing in the criminal trespass case erred in finding no probable cause for the arrest on June 13. The evidence was clear, palpable, and undisputed.

The issues in the plaintiff's action for malicious prosecution against the defendants for his criminal trespass arrest on June 13, 1993, were previously adjudicated adversely to the plaintiff in his malicious prosecution against Achor Center, which had previously demanded that United Baptist Church exclude plaintiff from the property, i.e., both the church and women's dormitory. The Center suggested plaintiff's arrest on June 13, when Holmes sought to hold services there against the express oral notice of both Achor Center, given on May 2, and United Baptist Church, given in writing on May 14. See *Achor Center v. Holmes*, 219 Ga. App. 399 (465 SE2d 451) (1995). This Court found that the trial court erred in failing to grant summary judgment to Achor Center: "Upon review of the undisputed evidence, we conclude that Achor could reasonably believe Holmes was guilty of the crime for which he was arrested. . . . Holmes admits that after his expulsion, he was not welcome at the Achor facility and Achor officials clearly communicated that to him. Holmes' deposition testimony reflects that, a few days prior to his arrest, Achor removed from its property the church sign that contained Holmes' name. Holmes confronted the individual removing the sign and their exchange grew so heated that the police were summoned. By his own admission, Holmes perceived the sign's removal as an indication that he was without authority to enter Achor's property. Achor also changed the facility's locks to prevent Holmes' entry to the property, another act that Holmes considered part of a 'continuing effort' to bar him from the property. Finally, as he stated in an affidavit given prior to his arrest, Holmes heard an Achor chairperson, Joyce Dorsey, openly and unequivocally state that Holmes was

not to return to Achor's property. In light of the above, when Holmes subsequently appeared on Achor property, Achor could reasonably believe that Holmes knowingly entered its property without consent and was thus guilty of criminal trespass." (Footnote omitted.) Id. at 400-401. The relevant evidence as to probable cause is the same in this case as in *Achor Center v. Holmes*, supra.

The plaintiff, Rev. Sperry, Chair of Deacons James Dowd, and others were present at the May 2, 1993 church conference when Dorsey, acting on behalf of Achor Center, gave public notice to the plaintiff that he was not to return to its property in the future, including the portions used by United Baptist Church, and that it would exercise its legal rights to remove him from the property. Prior to the arrest, the defendants had successfully defended an application for a restraining order regarding plaintiff's termination as pastor and expulsion as a member. The superior court proceeding, too, put plaintiff on notice that he was excluded from the property. Rev. Sperry was also present on June 13 when Dorsey suggested to Rev. Sperry that the police be called to remove the plaintiff and when Dorsey, in his presence and in the presence of the plaintiff, told the officer that plaintiff's right to enter the property had been terminated.

"Where undisputed facts disclose that a complaint was filed in good faith and with probable cause, summary judgment is appropriate. *Booker v. Eddins*, 183 Ga. App. 449, 450 (359 SE2d 211) (1987), [overruled] on other grounds[,] *Cincinnati Ins. Co. v. Perimeter Tractor &c. Repair*, 192 Ga. App. 243 (384 SE2d 449) (1989). In light of the foregoing, we find that the trial court erred in denying [defendants'] motion for summary judgment on the malicious prosecution claim. This holding is consistent with the policy to disfavor malicious prosecution actions and to encourage citizens to report an individual they suspect may have committed crimes. See *K-Mart Corp. v. Coker*, 261 Ga. 745, 747-748 (410 SE2d 425) (1991)." *Achor Center v. Holmes*, supra at 402.

2. Under the holding in Division 1, the issue raised in the remaining enumeration of error need not be addressed.

*Judgment reversed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED APRIL 1, 1998 —
RECONSIDERATION DENIED APRIL 15, 1998 —

*Drew, Eckl & Farnham, W. Wray Eckl, Anne M. Landrum, Christopher R. Stovall*, for appellants.

*Johnson & Freeman, Ronald J. Freeman, Maureen M. McLeod*, for appellee.