A01A1951. KIM et al. v. LIM et al.
(563 SE2d 485)

SMITH, Presiding Judge.

In this case, we are once again called upon to decide the extent to which the courts of this state may resolve disputes arising within a

---

church or religious organization. While First Amendment concerns substantially limit the power of the courts to intervene in internal church disputes, we nevertheless may be required to resolve the issue of disposition of a church's property. Here, at least part of the dispute between the parties concerns the church's real and personal property. The trial court therefore erred in granting summary judgment in its entirety to the defendants below. We agree with the trial court, however, that the church at issue here is an autonomous congregational body and that this status places certain limitations on any court's inquiry. We also find that the trial court abused its discretion in denying the appellants' motion to add parties. We therefore reverse and remand this case for further action consistent with this opinion.

The facts relevant to those issues we are permitted to address are easily recounted. As the result of the decision to call an interim pastor, the Siloam Korean Church split into two factions, one led by plaintiff-appellants Steve Kim, Myong Ko, and Keum Rhee ("the Kim faction"), the other by defendant-appellees Tae Pyung Lim and Moon H. Kim ("the Lim faction"). After escalating physical confrontations at the church building, the Kim faction filed a petition for a temporary restraining order in the Superior Court of Gwinnett County.[1] The petition was amended to seek an accounting, and the action was further amended at various times to assert, among other claims, contentions regarding the church building, the church bank account, and a note held first by Wachovia Bank and then by another corporation formed by some of the church members. The Kim faction also filed a motion to add parties and attached a fourth amended and restated complaint to this motion. After discovery, including the depositions of many of the principal participants in the controversy, the Lim faction moved for summary judgment.

In a lengthy order,[2] the trial court concluded that the church government was congregational in form and that all disputes between the parties arose from a question of church discipline and government of ecclesiastical affairs. It further concluded that the named plaintiffs (appellants here) had no standing to bring their claim because they had been excommunicated by proper authority of the defendant-appellees. Concluding that only a majority of the church members can decide the disposition of the church property,

---

[1] A second action has been filed in Fulton County by some of the members of the Lim faction against some of the members of the Kim faction.

[2] While the order of the magistrate sitting by designation in this case contains four pages of factual and legal conclusions, it contains no record references and cites no constitutional provision, statute, or decision of any court in support of its lengthy and detailed findings.

the trial court granted summary judgment with respect to all claims asserted before the filing of the fourth amended complaint. It also granted permission to the defendants to file for summary judgment with respect to any issues raised in the fourth amended complaint.

The Kim faction appealed, asserting 21 enumerations of error. Appellants' brief, however, addresses only some of these enumerations and fails to place them in orderly sequence as required by Court of Appeals Rule 27 (c) (1). Any enumerations of error not supported in the brief are deemed abandoned. Court of Appeals Rule 27 (c) (2). Moreover, the constitutional limitations imposed upon our courts forbid addressing many of these claims. We will consider here only those that are both permissible and dispositive.

1. In cases involving disputes over church property, Georgia law recognizes two types of church government: congregational and hierarchical. *Kidist Mariam Ethiopian &c. Church v. Kidist Mariam Ethiopian &c. Church*, 219 Ga. App. 470, 472-473 (1) (465 SE2d 491) (1995). We therefore must determine whether the Siloam Korean Church is a congregational or hierarchical church.

> A congregational church has been defined as one "strictly independent of other ecclesiastical associations, and (one that) so far as church government is concerned, owes no fealty or obligation to any higher authority." *Watson v. Jones*, 80 U. S. 679, 722 [(20 LE 666)] (1871). On the other hand, "(h)ierarchical churches may be defined as those organized as a body with other churches having similar faith and doctrine with a common ruling convocation or ecclesiastical head." *Kedroff v. St. Nicholas Cathedral of the Russian Orthodox Church*, 344 U. S. 94, 110 [(73 SC 143, 97 LE 120)] (1952).

*Crumbley v. Solomon*, 243 Ga. 343, 344 (254 SE2d 330) (1979).

> If the church government is congregational, then a majority of its members control its decisions and local church property. If hierarchical, then we use neutral principles of law to determine whether the local church or parent church has the right to control local property. Those neutral principles are state statutes, corporate charters, relevant deeds, and the organizational constitutions of the denomination.

(Citations and punctuation omitted.) *Kidist Mariam*, supra, 219 Ga. App. at 473 (1).

Here, the evidence is undisputed that the Siloam Korean Church was founded as a wholly independent church, answering to no association, synod, convocation, bishop, or other ecclesiastical head. None of the church documents in the record reflect any obligation or fealty

to a higher church authority;[3] in fact, they state repeatedly that it is "an independent church" and that "this church is autonomous and no other church can interfere in its administration." The Siloam Korean Church, therefore, is congregational in character.

Appellants rely upon a decision of this court, *Crocker v. Stevens*, 210 Ga. App. 231 (435 SE2d 690) (1993), to assert that the governance of the Siloam Korean Church was not congregational but a "hybrid" form partaking of both congregational and hierarchical aspects. In *Crocker*, we found a church organized as a nonprofit corporation to represent a hybrid form of church governance. The only stated basis for this decision was that "the church was organized as a nonprofit corporation, with articles of incorporation and by-laws" and that such organization was inconsistent with the congregational form of church government. Id. at 233 (2). But the article of the Georgia Code governing corporations organized for religious purposes, OCGA § 14-5-40 et seq., includes a provision addressing exclusively the rights and representation of those churches having a congregational form of government. OCGA § 14-5-43; see *Jones v. Wolf*, 244 Ga. 388, 389 (3) (260 SE2d 84) (1979). Construing the mere existence of a corporate form to extinguish the congregational character of a church would render OCGA § 14-5-43 completely meaningless, and it is not presumed that the legislature intended to enact meaningless language. *Gilbert v. Richardson*, 264 Ga. 744, 747-748 (3) (452 SE2d 476) (1994). Such an interpretation is also contrary to other decisions of the Supreme Court of Georgia and this court treating some incorporated churches as congregational in character. See, e.g., *Anderson v. Dowd*, 268 Ga. 146, 147 (1) (485 SE2d 764) (1997); *First Rebecca Baptist Church v. Atlantic Cotton Mills &c. Church*, 263 Ga. 688 (440 SE2d 159) (1993); *Reddick v. Jones*, 251 Ga. 195 (304 SE2d 389) (1983); *Holmes v. Peebles*, 251 Ga. App. 417 (554 SE2d 566) (2001). To the extent that *Crocker* can be construed as holding that an incorporated church cannot be a congregational church, it is disapproved. Compare *Kidist Mariam*, supra, 219 Ga. App. at 473 (local church "hybrid" because acknowledged authority of archbishop of its denomination in matters of religious faith, practice, and liturgy only, while reserving to itself control of internal affairs of church corporation).

Appellants also rely upon *First Born Church of the Living God v. Hill*, 267 Ga. 633 (481 SE2d 221) (1997). In *First Born*, the Supreme

---

[3] Several variants of a church constitution or statement of faith styled "constitution" or "rules" or "by-laws" appear in the record, in Korean and in English translation, as well as articles of incorporation and bylaws filed in connection with the nonprofit corporation created by the church. Appellants and appellees differ strenuously as to which of these documents should be given primacy over the others. But we limit our inspection of these records here to a determination of whether the church government is congregational or hierarchical in character.

Court of Georgia considered whether the trial court could properly order a church to conduct annual meetings as provided by the general corporations code in OCGA § 14-3-701. In concluding that the internal governance of the church did not provide for such annual meetings, the court construed a " 'ruling convocation or ecclesiastical head' " as defined in *Crumbley*, supra, 243 Ga. at 344, to include not only a religious hierarchy existing outside and above the individual church but also an executive board and senior bishop elected by the congregation to manage the internal affairs of the individual church. From this, the Supreme Court concluded that the church was hierarchical because "[t]he Church constitution affords its membership only indirect control over Church affairs through the right to vote for the Executive Board and Senior Bishop at the Church General Assembly held every four years." *First Born*, supra, 267 Ga. at 634 (1). Therefore, it concluded the trial court could not order annual meetings to be held because the order was "an unconstitutional judicial interference in the government of the Church." Id.

It may be argued that the distinction drawn by the Supreme Court in *First Born* was focused only on the authority of the courts of this state to force a church to call a meeting in conflict with the church constitution and that it was not intended to change the definition of a congregational church as established by the United States Supreme Court in *Watson*, supra, and in *Kedroff*, supra. *Watson* explicitly recognizes that a congregational church may be governed "solely within itself, either by a majority of its members *or by such other local organism as it may have instituted* for the purpose of ecclesiastical government." (Emphasis supplied.) 80 U. S. at 724. But we need not reach that issue, because the original bylaws of the Siloam Korean Church as constituted upon founding of the church in 1992, while providing for some managerial duties on the part of a board of deacons and session, repose authority for decisions of church governance in the membership and state that "the administrative power of the church comes from the membership." A later revision of these bylaws, identified by a deacon of the church in his affidavit, also calls for votes by the membership. The bylaws of the nonprofit corporation also provide for decisions to be made by the membership at both annual and special meetings. The membership of the Siloam Korean Church, through both its ecclesiastical and corporate enactments, therefore retains direct control over the affairs of the church.[4] For this reason, *First Born* is inapplicable here.

---

[4] As noted in *First Born*, the Georgia Nonprofit Corporations Code provides that if any of its provisions is inconsistent with religious doctrine governing a nonprofit corporation's affairs "on the same subject, the religious doctrine shall control to the extent required by the Constitution of the United States or the Constitution of this state or both." OCGA § 14-3-180; *First Born*, supra, 267 Ga. at 633.

2. The court may not inquire into " 'a controversy relating to the faith, teaching, doctrine, and discipline of the church' " such as expulsion from membership, internal procedures, quorums, or determination of membership in the church. *United Baptist Church v. Holmes*, 232 Ga. App. 253, 254 (500 SE2d 653) (1998). These "are religious matters that the court shall not question, and . . . are beyond judicial review." Id. Thus, the relative import of the various church documents in the record (some in Korean and some in English), including the different versions of the church's religious constitution, bylaws, and corporate documents, and the validity of the excommunication of appellants Steve Kim and Myong Ko by the church session, are beyond the power of the Georgia courts to determine. Such matters of doctrine and church discipline would bring "the Georgia courts into the heart of an ecclesiastical dispute, a position we are eminently unqualified to take and are forbidden to take by the constitutional safeguard of separation of church and state." *St. Mary of Egypt Orthodox Church v. Townsend*, 243 Ga. App. 188, 194 (532 SE2d 731) (2000).

But the trier of fact is not forbidden to consider the composition of the church membership for the limited purpose of determining standing to bring a claim on behalf of the church membership. *Anderson*, supra, 268 Ga. at 147. The trial court therefore properly considered membership in the church in determining the standing of appellants to bring this action, but it did not complete its analysis. It is true that an expelled or excommunicated member cannot represent church members in a claim to prevent diversion of church property, and it is also true that we may not inquire into the validity of such an excommunication. *Stewart v. Jarriel*, 206 Ga. 855, 856 (5), (6) (59 SE2d 368) (1950). But while the record reflects that appellants Steve Kim and Myong Ko were excommunicated by resolution of the church session and acknowledged receiving the notice of excommunication, although they disputed its validity, nothing shows that Keum Rhee, the third appellant, was excommunicated or otherwise removed from membership in the church. She therefore is qualified to bring an action in which she claims to represent a majority of the membership of the church. *Gervin v. Reddick*, 246 Ga. 56, 57 (2) (268 SE2d 657) (1980); *Sapp v. Callaway*, 208 Ga. 805, hn. 2 (69 SE2d 734) (1952).

Moreover, without impinging upon religious or doctrinal matters, the trial court may legitimately consider matters involving distribution or disposition of tangible church property such as realty, bank accounts, and other temporal assets. "It is well-settled that a court of equity will take jurisdiction over disputes involving churches when property rights are involved and when the suit is brought on behalf of a majority of the congregation." *Gervin v. Reddick*, supra, 246 Ga. at 57 (2).

3. We next consider the scope of permissible review of the actions of a congregational church body by the courts of this state. The courts are authorized to determine which of the disputing factions here represents a majority of the membership of the Siloam Korean Church, a finding of fact that may be established without inquiring into religious doctrine or governance. *Gervin v. Reddick*, supra, 246 Ga. at 57 (2); *Mitchell v. Dickey*, 226 Ga. 218, 220-221 (2) (173 SE2d 695) (1970). In this context, "church documents will be considered only insofar as they determine or assist in the determination of the persons who are entitled to possess and enjoy the property." (Punctuation omitted.) *Jones v. Wolf*, supra, 244 Ga. at 389 (3). This determination should resolve all matters pending before the court pertaining to rights in the church property, the only issue the courts are authorized to decide here. Once the trial court "resolve[s] the property issues by determining which group represented the majority of the congregation," its involvement must come to an end. *Gervin v. Reddick*, supra, 246 Ga. at 59 (5). Since the question of majority membership is a question hotly disputed by the Kim and Lim factions and therefore must be decided by the trier of fact, the grant of summary judgment by the trial court was inappropriate.

4. In view of our decision that the trial court's grant of summary judgment must be reversed, we agree with appellants' contention that the trial court erred in denying their motion to add parties. "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." OCGA § 9-11-21. "Where a party seeks to add a new party by amendment, OCGA § 9-11-21 requires the exercise of discretion by the trial court. A trial court abuses that discretion, however, if it denies the addition of a party based on delay alone." (Citations and punctuation omitted.) *Shiver v. Norfolk-Southern R. Co.*, 220 Ga. App. 483, 484 (469 SE2d 769) (1996). Here, the trial court denied appellants' motion in one sentence without any explanation of the manner in which it exercised its discretion. We therefore cannot review the propriety of the trial court's decision. In view of the significantly altered posture of this case on remand, we reverse the trial court's denial of appellants' motion to add parties and direct the trial court to reconsider the motion in light of the limited issues to be presented on remand. As we noted above, appellants' action may continue based upon appellant Keum Rhee's allegation that she represents a majority of the church membership.

Accordingly, the trial court's denial of appellants' motion to add parties is reversed. The trial court's grant of summary judgment on the basis of lack of standing and First Amendment grounds is also reversed, and this case is remanded for further proceedings consistent with this opinion.

*Judgment reversed and remanded. Pope, P. J., Andrews, P. J., Johnson, P. J., Ruffin, Barnes, Ellington, Phipps and Mikell, JJ., concur. Blackburn, C. J., Eldridge and Miller, JJ., concur specially.*

BLACKBURN, Chief Judge, concurring specially.

I agree with the majority that some imprecise language in *Crocker v. Stevens*, 210 Ga. App. 231 (435 SE2d 690) (1993), merits clarification. Specifically, *Crocker* indicates that the church involved therein was hybrid in nature, neither congregational nor hierarchical, although it would have been more accurate to state that the *law* applicable to that congregational church, not the church's classification, was a hybrid blend of traditional congregational and hierarchical jurisprudence. In other words, because the church was congregational in nature but a nonprofit corporation in form, analysis of its internal bylaws using neutral principles of law (a hallmark of hierarchical jurisprudence) would be required to adjudicate the claims brought by the controlling majority faction (a hallmark of congregational jurisprudence). This resulting hybrid jurisprudence, set forth in *Reddick v. Jones*, 251 Ga. 195 (304 SE2d 389) (1983), was appropriately applied to the facts in *Crocker*, and, as such, its underlying premise remains sound.

I concur in the majority's opinion, but not its verbiage, because I strongly believe that one of the main functions of this, or any other court, is to constantly refine our case law and remove ambiguities wherever possible, without harshness.

I am authorized to state that Judge Eldridge and Judge Miller join in this special concurrence.

DECIDED MARCH 29, 2002.

*Hollberg & Weaver, William B. Hollberg, Townsend McKee, Timothy W. Townsend*, for appellants.

*Macey, Wilensky, Cohen, Wittner & Kessler, Richard C. Litwin, Andrew S. Ree*, for appellees.