A03A1243. HOWARD v. JOHNSON et al.
(592 SE2d 93)

ADAMS, Judge.

Five deacons of the Fielding Spring Missionary Baptist Church[1] filed suit against Reverend Gilbert Howard, the pastor of the church, in connection with Howard's handling of church funds and property. The complaint sought a declaratory judgment that the Board of Deacons had authority to control church property, and further sought to enjoin Howard from interfering with church business.

Fielding Spring Missionary Baptist Church was organized in 1880. The church is not incorporated and does not have a written

---

[1] The plaintiffs are Richard Johnson, Franklin Drummer, Judson Ruffin, Stephen Gaines, and Leroy Johnson. They brought this suit individually and in their capacity as deacons.

constitution or bylaws. Rather, the church is governed by custom and practice, under which church deacons are vested with authority over temporal affairs. On or about June 20, 2001, Richard Johnson, one of the deacon-plaintiffs, began questioning Howard's handling of church finances because expenses were exceeding income.[2] This controversy soon developed into a dispute over church leadership, and a church meeting was held on July 19, 2001. The majority of those present at that meeting voted to discharge Johnson and the other four deacon-plaintiffs from office. Two of the deacon-plaintiffs were also voted out of the church. The deacons denied ever receiving notice that the meeting would address the issue of their termination or their membership, and they questioned the number of actual church members attending the meeting.

In their complaint, the deacons asserted that they represented a majority of the Board of Deacons and a majority of the church congregation. They produced 57 signatures supporting their contentions that they represented a majority of the congregation and that the majority sought the resignation of Howard as pastor of the church. But Howard produced over 100 identically worded form "Affidavits" supporting the results of the July 19 meeting. These documents stated that a majority of the church had attended the meeting and had voted to remove the deacon-plaintiffs from office. The evidence showed, however, that a number of these affidavits were signed by people who were under eighteen, some as young as five years old.

At the rule nisi hearing, there was no clear evidence of the number of members belonging to the church, although one witness estimated it at approximately eighty people. The trial court found that a genuine issue of material fact existed as to which of the two competing factions (the deacons' or the pastor's group) represented a majority of the congregation. The court then established a procedure for holding an election to resolve this issue, in which the church members were asked to vote either for a slate of representatives for the deacon-plaintiffs or for a slate of representatives for the pastor. The representatives receiving the majority of votes would be authorized to have use and possession of church property. In conjunction with the election, the deacons' attorney submitted a list reflecting that the church had over 200 qualified voting members, and the trial court approved that list as the role of eligible voters. There is nothing in the record to indicate that Howard disputed the accuracy of this list.

The election was held on August 18, 2002, and the results were

---

[2] The Bank of America holds a mortgage on the church's real property and improvements. As of November 26, 2001, the church had failed to make four of the monthly mortgage payments. The bank and the church entered into a consent order to liquidate the church certificates of deposit until the matter could be resolved.

certified to the trial court. The representatives of the deacon-plaintiffs received 69 of the 123 ballots cast, while Howard's representatives received 51 votes.[3] The trial court entered an order on September 6, 2002, granting the deacon-plaintiffs possession and authority over church property.

In response, Howard filed motions for new trial, for reconsideration, to set aside the judgment, and for stay of entry of judgment. The trial court denied these motions, with the exception of the motion for reconsideration, which was granted "to remold" the court's prior order to include findings of fact and to reflect consideration of the Supreme Court's decision in *Gervin v. Reddick*, 246 Ga. 56 (268 SE2d 657) (1980). Howard appeals.

1. Howard asserts that the trial court violated the First Amendment to the United States Constitution when it failed to dismiss the deacons' complaint after receiving evidence of the July 19, 2001 meeting.

> " '(T)he First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment. Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property.' *Presbyterian Church in the United States v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U. S. 440, 449 (89 SC 601, 21 LE2d 658) (1969)."

*Kidist Mariam Ethiopian Orthodox Tawahedo Church v. Kidist Mariam Ethiopian Orthodox Tawahedo Church*, 219 Ga. App. 470, 472 (1) (465 SE2d 491) (1995). And the Supreme Court of Georgia has acknowledged that in disputes involving congregational churches, courts of equity will take jurisdiction "when property rights are involved and when the suit is brought on behalf of a majority of the congregation." *Gervin*, 246 Ga. at 57 (2). See also *Members of Calvary Missionary Baptist Church v. Jackson*, 259 Ga. App. 647, 648 (578 SE2d 275) (2003).

Here, it is undisputed that Fielding Spring Missionary Baptist Church is a congregational church, that is, a church that is "strictly independent of other ecclesiastical associations." *Kidist Mariam*, 219 Ga. App. at 473 (1). And the trial court was presented with a property dispute, with the pastor and the group of deacons both claiming control over church property and funds. Thus, the sole issue before

---

[3] Three of the ballots were apparently disqualified during the voting process.

the trial court was to determine whether the pastor or the deacons represented the majority of church members. See *Gervin*, 246 Ga. at 58 (5).

Howard asserts that the evidence he presented regarding the July 19 meeting should have resolved this issue. But that evidence did not definitively establish that a majority of the church members had voted to give control of the church property to the pastor. Although the affidavits purported to be from church members, the deacons testified that some of the affiants were not members of the church. And an unspecified number of the affidavits were signed by individuals without the legal capacity to do so. But most importantly, the evidence failed to establish the number of members in the church, so the trial court was unable to determine whether a majority had decided anything. The only evidence presented at the rule nisi hearing was that the church had approximately 80 members, yet Howard presented over 100 affidavits purporting to be from members.

Nor was the question resolved when the trial court certified the list of church members. That list contained 203 names, but only around 60 of the pastor's affiants can be readily identified on the membership roster, and not all of them attended the July 19 meeting. Moreover, only around 48 of the individuals who signed their support for the deacons appear on the membership list. Thus, the evidence failed to establish that either group had support from a clear majority of the church membership. Accordingly, we find no error in the trial court's conclusion that the July 19 meeting had not resolved the issue before it.[4]

2. Howard also contends that the trial court erred in mandating the procedures for the election. He asserts that by doing so, the trial court stepped impermissibly into the areas of "faith, teaching, doctrine, and discipline of the church." (Citation and punctuation omitted.) *Kim v. Lim*, 254 Ga. App. 627, 632 (2) (563 SE2d 485) (2002). We disagree.

"[T]he trier of fact is not forbidden to consider the composition of the church membership for the limited purpose of determining standing to bring a claim on behalf of the church membership." (Citation omitted.) *Kim*, 254 Ga. App. at 632 (2). Thus, courts are authorized to determine which of two disputing factions represents the majority of a church membership. Id. at 633 (3).

In this case, the trial court could not determine from the evidence presented by the parties which faction had majority support to

---

[4] We note that the trial court did not purport to decide any other issues considered at the July 19 meeting. The court did not address the issues of membership or church office that were voted on there. *Anderson v. Dowd*, 268 Ga. 146, 147 (1) (485 SE2d 764) (1997).

control the church property. And the trial court designed the election in this case for the sole purpose of resolving that issue. The rules set by the court for holding the election were intended to insure the fairness of the process and were justified by the prior conduct of the two factions. There was evidence, for example, that the July 19 meeting may have been manipulated to exclude the deacon-plaintiffs and their supporters. Further, it appeared that nonmembers may have been allowed to cast votes. Under the limited circumstances of this case, therefore, we find that the trial court could properly order and supervise an election process to determine which faction had majority support on the issue of church property.[5]

Moreover, contrary to Howard's argument, we do not believe that the election violates the holding in *Gervin*. There, our Supreme Court held that the trial court erred when, after determining which faction represented a majority of the congregation, it appointed a special master to aid the congregation in adopting written rules and regulations. The Supreme Court held that after the trial court decided which group represented the majority of the congregation, the church property and its government should have vested in that majority with no further conditions or limitations imposed by the court. The Supreme Court found that by appointing the special master, the trial court improperly intruded into the church's internal affairs. *Gervin*, 246 Ga. at 58-59 (5).

In this case, however, the trial court did not exceed its authority, as it limited the election procedures to resolving the issue of which faction represented the majority, the only proper question before the court. Moreover, the election called for majority rule, which was in compliance with church practice and the law governing congregational churches. Compare *First Born Church of the Living God v. Hill*, 267 Ga. 633, 634 (1) (481 SE2d 221) (1997) (court acted improperly in compelling hierarchical church to hold annual meeting with the membership voting, where church bylaws provided that membership had no right to direct control over church affairs).

Accordingly, we find no error.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

---

[5] We note, however, that the two deacons who were purportedly expelled from the church membership at the July 19 meeting were included in the list of church members eligible to vote, but Howard raised no objection to their inclusion prior to the election. And even if their two votes are excluded, the deacon-plaintiffs still received votes from a majority of those participating in the election. Further, while an expelled member of the congregation cannot represent church members in a dispute about church property, here there were three other deacon-plaintiffs who could properly represent the church membership. *Kim*, 254 Ga. App. at 632 (2).

DECIDED NOVEMBER 18, 2003 —
RECONSIDERATION DENIED DECEMBER 12, 2003.

*Elliott B. Watkins*, for appellant.
*Stephen E. Shepard*, for appellees.