A05A0893. WAVERLY HALL BAPTIST CHURCH, INC. et al.
v. BRANHAM et al.
(625 SE2d 23)

RUFFIN, Chief Judge.

Twenty-six members of Waverly Hall Baptist Church, Inc. (the "appellees") filed suit against their church, its pastor, and three deacons (collectively, "appellants"), seeking injunctive and declaratory relief. After a hearing, the trial court: (1) found it had authority and jurisdiction to address the plaintiffs' complaint; (2) ordered the nonprofit church to hold a meeting in accordance with OCGA § 14-3-703; (3) set forth the items to be voted on at the meeting, including whether to retain the pastor and deacons; (4) determined who would be allowed to vote; and (5) ruled on various motions. This appeal ensued, and for reasons that follow, we affirm in part and reverse in part.

Viewed in a light most favorable to the ruling below,[1] the record demonstrates that Waverly Hall Baptist Church (the "church") is a congregational church and a nonprofit corporation, which is governed by its constitution and bylaws.[2] The church is also a beneficiary of a

---

[1] See *Srisovana v. Cambodian Buddhist Society, Inc.*, 269 Ga. App. 600 (604 SE2d 637) (2004).

[2] "A congregational church is defined as one that is 'strictly independent of other ecclesiastical associations, and one that so far as church government is concerned, owes no fealty or obligation to any higher authority.'" *Pritchett v. Wesleyan Pentecostal Church at Holly Springs*,

trust valued at over $8 million. A portion of that trust is used to fund the Waverly Hall Christian Academy, a school affiliated with the church.

The church constitution requires that a pastor be elected by an affirmative vote of 75 percent of the members present. The bylaws also provide that only those members who "are in full and regular standing and do not hold letters of dismission, and such only, may act and vote in the transactions of the church." In January 2004, a vote was held by the church membership on whether Robert Wilkerson would be elected as pastor. Of the twenty-nine members present during the vote, seventeen voted in favor of Wilkerson, four voted no, and eight members abstained.

After Wilkerson became pastor, problems allegedly arose within the church. According to the appellants, a doctrinal dispute arose when certain church members accused Wilkerson of being a " 'secret' Calvinist."[3] According to the appellees, however, Wilkerson and the deacons were mismanaging the Academy. Whether as a result of a theological schism or mismanagement, the record shows that the enrollment at the Academy drastically declined after Wilkerson became pastor, and multiple teachers resigned.

Certain appellees apparently began spearheading an effort to oust Wilkerson as pastor, and several of them requested a special church meeting to vote on whether Wilkerson should be placed on administrative leave pending a determination as to whether he was properly "called" to pastor the church. Church members also sought the removal of church deacons Dan Reese, Mike Pemberton, and Jim Atkinson. During several contentious meetings, certain appellees attempted to have a vote taken on whether Wilkerson and the deacons should be removed, but they were declared to be out of order.

Following a June 13, 2004 church conference at which appellees once again sought the removal of the pastor, Wilkerson and the deacons called a special conference to discuss those church members who were seeking their removal. Wilkerson and the deacons then sent letters to 28 members, informing them that a complaint had been lodged against them, in part, for "fail[ing] to support and honor the [church] leadership Christ has established."[4] A church hearing was scheduled for June 19, 2004, to address "the accusations and proofs against" the members.

---

265 Ga. App. 565, 567 (2) (594 SE2d 750) (2004).

[3] According to newspaper articles admitted in evidence, the dispute centered over the meaning of predestination.

[4] With the exception of two church members, the individuals listed in the June 13 letter from Wilkerson and the deacons are plaintiffs below.

On June 16, 2004 — before the hearing took place — the appellees filed suit against the church, alleging inter alia that: (1) Wilkerson was improperly elected pastor; (2) the members were being improperly stymied in their effort to remove the deacons; (3) the deacons, as board directors, had mismanaged the Academy; and (4) Wilkerson and the deacons had improperly added church members "to solidify their control" over church assets. The appellees sought a restraining order enjoining the appellants from spending church funds, transferring church property, and conducting corporate affairs. The appellees also petitioned the court to determine church membership, to order the appellants to hold a meeting in accordance with OCGA §§ 14-3-160 and 14-3-703 for church members to vote on whether Wilkerson and the deacons should be removed, and to appoint a neutral moderator to preside over the meeting.

Following a hearing, the trial court ordered a meeting in accordance with OCGA §§ 14-3-160 and 14-3-703 and appointed a moderator. The court further ordered that, during the meeting, individuals admitted as church members before the disputes arose would be allowed to vote on the following issues: (1) whether to terminate Wilkerson as pastor; (2) whether the deacons should be removed; and (3) whether Wilkerson and his wife and the Craddock family should be admitted as church members.

In multiple enumerations of error, the appellants challenge the trial court's ruling. Specifically, the appellants contend: (1) the trial court lacked jurisdiction; (2) the appellees' claims are barred by the doctrine of "unclean hands"; (3) the trial court misconstrued the church's bylaws in determining who was eligible to vote; (4) the trial court erred in finding that the Wilkersons and Craddocks were not currently church members; (5) the trial court erred in enjoining the church from admitting new members "and from proceeding with discipline as required by the [church's] constitution and bylaws"; and (6) the trial court erred in finding that the appellants had obstructed the voting.

1. As this Court recently noted, although courts lack authority to inquire into controversies involving "religious matters such as internal church procedures and expulsion from church membership [cit.], the court does have jurisdiction to resolve issues that do not require an impermissible intrusion or excessive entanglement into ecclesiastical matters."[5] Moreover,

---

[5] (Citation omitted.) *Members of Calvary Missionary Baptist Church v. Jackson*, 259 Ga. App. 647, 647-648 (578 SE2d 275) (2003).

[i]t is plain that Georgia courts have jurisdiction over disputes involving a nonprofit corporation's board of directors as well as the disposition of church property by that board, as long as we respect the nonprofit corporation's right to determine its own membership roster and bylaws.[6]

In determining whether a court has jurisdiction to entertain a complaint against a church, courts look to the main and material allegations of the pleadings.[7] Generally, "a court of equity will not interfere with the internal affairs of a religious organization, when no property rights are involved[,] for the reason that civil courts have no jurisdiction of such matters and cannot take jurisdiction of them."[8]

Here, the appellants assert that the trial court erred in finding it had jurisdiction because: (a) the dispute is actually theological; (b) there are no property rights implicated; (c) neutral principles of law cannot be used to resolve the dispute; and (d) the appellees did not represent a majority of the church. We address each argument in turn.

(a) The appellants assert that, notwithstanding the trial court's conclusion that the case involved a property dispute, the overwhelming evidence suggests that the dispute was, in fact, theological. Specifically, the appellants point to the fact that the attempt to remove the pastor and deacons followed the allegations that Wilkerson was a Calvinist.

In the recent case of *Bolden v. Barton,* the Supreme Court addressed a court's jurisdiction to entertain "a dispute . . . among church members regarding who should serve as the pastor."[9] Although the trial court found that the dispute involved control over church property, the Supreme Court disagreed, finding that "the allegations of the complaint do not expressly assert the existence of competing claims over church property, but focus instead entirely upon the controversy regarding [the minister's] continued service as pastor."[10] And the Supreme Court concluded that "an allegation of the existence of a dispute over who should be the pastor, without more, does not confer jurisdiction on the courts to address and rule on the matter."[11] Thus, if this dispute involves who should serve as pastor, this Court lacks jurisdiction.

---

[6] *Srisovana,* supra at 602 (1).
[7] See *Bolden v. Barton,* 278 Ga. 831 (1) (607 SE2d 889) (2005).
[8] (Punctuation omitted.) Id.
[9] Id. at 831.
[10] Id. at 832 (1).
[11] Id.

In this case, however — unlike *Bolden* — the complaint does not expressly set forth a complaint that Wilkerson should not serve as pastor. Rather, the complaint challenges the church leadership's unwillingness to entertain a vote as to whether the pastor should remain. And courts have found no jurisdictional bar to entertaining such procedural challenges.[12] To the extent the appellants contend that the framing of the complaint was merely a pretext for a doctrinal schism, this is essentially a factual dispute, which the trial court was authorized to resolve.[13]

(b) In a dispute involving a congregational church, such as this, "courts of equity will take jurisdiction when property rights are involved and when the suit is brought on behalf of a majority of the congregation."[14] Again, we look to the complaint to determine whether the court has jurisdiction,[15] and the complaint at issue purports to set forth a dispute over property. Accordingly, the appellants' argument that this case does not involve a property dispute presents no basis for reversal.[16]

(c) The appellants also argue that the court should not take jurisdiction because the dispute cannot be resolved using neutral principles of law. In its order, the trial court found that the church's constitution and bylaws were silent on the issue of removing deacons. Thus, the trial court relied upon certain legal principles set forth in the Georgia Code regarding nonprofit corporations. Specifically, the trial court found that the deacons were analogous to directors of a nonprofit corporation and thus could be removed in accordance with OCGA § 14-3-808. The appellants, however, argue that the deacons are not corporate directors and that their role is solely religious.

The Georgia Nonprofit Corporation Code can be used to resolve certain controversies involving religious institutions.[17] Under OCGA § 14-3-801, each nonprofit corporation must have a board of directors, which is responsible for exercising corporate authority. And the comment to this Code section recognizes that board members for nonprofit corporations are sometimes called by other names such as trustees or regents.[18] It also clarifies that this section "applies to the

---

[12] See *Srisovana*, supra; *Jackson*, supra; *Howard v. Johnson*, 264 Ga. App. 660, 662 (1) (592 SE2d 93) (2003).

[13] See *Srisovana*, supra at 602 (2) ("we will not disturb the trial court's holdings . . . as to fact . . . unless the record shows . . . a total absence of fact to support [the] conclusion").

[14] (Punctuation omitted.) *Howard*, supra.

[15] See *Bolden*, supra at 831.

[16] See *Howard*, supra at 662-663.

[17] See OCGA §§ 14-3-180; 14-5-40 et seq.; *Kim v. Lim*, 254 Ga. App. 627, 629-631 (1) (563 SE2d 485) (2002).

[18] OCGA § 14-3-801 (Comment).

group or person under whose authority corporate powers are exercised and under whose direction the affairs of the corporation are managed, regardless of the name or designation given to the person or group."[19]

Here, the evidence does not support the trial court's conclusion that the deacons are, in fact, the church members who exercise corporate power. Rather, the bylaws suggest that their role is largely, if not wholly, spiritual. For example, their duties require them to: "be zealous to guard the unity of the spirit within the church"; work with the pastor "in all things pertaining to the saving of souls, the development of Christians, and the extension and growth of the kingdom of God"; and "seek to know the physical needs and the moral and spiritual struggles of the brethren and sisters." The bylaws further provide for other church officers and committees whose members would seem to conduct the corporate affairs of the church.[20]

Given the uniquely religious role of the deacon within the church, the removal of such person under the provisions set forth in the Georgia Code crosses the line in terms of drawing the court "into the heart of an ecclesiastical dispute, a position [courts] are eminently unqualified to take and are forbidden to take by the constitutional safeguard of separation of church and state."[21] Thus, the trial court abused its discretion in treating the deacons as directors of a non-profit corporation subject to dismissal under OCGA § 14-3-808. In other words, neutral principles cannot be used to resolve this particular issue.

The fact that neutral principles cannot be used to redress one issue, however, does not present a general jurisdictional bar. In its order, the trial court also found that neutral principles derived from the Code could be used to order the meeting at which church members would vote upon, inter alia, whether Wilkerson should be retained as pastor.[22] Specifically, the trial court held that such meeting could be called in accordance with OCGA §§ 14-3-160 and 14-3-703. And merely requiring a congregational church to hold a meeting pursuant to the Georgia Nonprofit Corporation Code does not constitute "an impermissible intrusion or excessive entanglement into ecclesiastical matters."[23]

---

[19] Id.

[20] Specifically, the bylaws provide for a church treasurer, clerk, multiple church officers, and committees, including a finance committee.

[21] (Punctuation omitted.) *Kim*, supra at 632 (2).

[22] The church's bylaws provide that the pastor may have his relationship with the church terminated by "the affirmative consent of three-fourths of those present."

[23] *Jackson*, supra at 648; *Srisovana*, supra at 602 (1).

(d) The appellants maintain that the court lacks jurisdiction because there is no evidence that the appellees represent a majority of church members. With respect to congregational churches such as this one, courts exercise jurisdiction only in those suits brought on behalf of a majority of the congregation.[24] The trial court determined that there was no need for a majority of the members actually to be named plaintiffs, merely that the actual plaintiffs represent the interests of the majority. And it found that "there are reasonable grounds to believe that [the appellees] represent a majority."

According to the appellants, there is no evidence that the appellees represent a majority of members, particularly as the trial court found that the church had nearly 200 members. However, appellants admit that many of those listed on the church roster did not attend church or involve themselves in church business and were thus ineligible to vote in church matters. Indeed, only 29 members were present when Wilkerson was elected pastor. Under these circumstances, we cannot say that the trial court abused its discretion in concluding that the 26 plaintiffs represented a majority of the church.

2. In its order, the trial court determined that all of the approximately 200 persons listed as members with no notation of death or dismission in the "official membership role of the church" were eligible to vote at the meeting that it ordered. On appeal, the appellants contend that this finding conflicts with the church bylaws that set forth which church members are eligible to vote.

As this Court recently stated, Georgia courts clearly have jurisdiction over those "disputes involving a nonprofit corporation's board of directors as well as the disposition of church property by that board, as long as we respect the nonprofit corporation's right to determine its own membership roster and bylaws."[25] Here, the church's bylaws specify that "[s]uch members as are in *full and regular standing* and do not hold letters of dismission, and such only, may act and vote in the transactions of the church."[26] During the hearing, the appellants strenuously argued that some of the members listed on the church's rolls have not, in fact, attended church in recent years and thus cannot be considered "full and regular" members.

Again, the church is a nonprofit corporation, and the bylaws of a corporation must be construed according to contract principles.[27] One such rule requires courts to give meaning to every term within the

---

[24] See *Howard,* supra; *Gervin v. Reddick,* 246 Ga. 56, 59 (5) (268 SE2d 657) (1980).

[25] *Srisovana,* supra.

[26] (Emphasis supplied.)

[27] See *Gwin v. Thunderbird Motor Hotels,* 216 Ga. 652, 658 (119 SE2d 14) (1961).

contract, rather than construe any term as meaningless.[28] In permitting all members listed on the church's roster to vote, the trial court rendered the language in the bylaws governing voting eligibility meaningless.

Here, the bylaws expressly provide that only "full and regular members" are eligible to vote, and we cannot simply disregard this language. The term "full and regular" is not defined in the bylaws, and we are unable to employ contract principles to determine the meaning of this phrase. This is particularly true where, as here, the bylaws provide that a church member's duties are spiritual in nature.[29] As a court, we are forbidden to engage in the subjective analysis needed to define what constitutes "full and regular" church membership as such inquiry would inevitably require us to delve into internal church procedures.[30]

The mere fact that a dispute involves a congregational church with a written constitution and bylaws does not mean that a church dispute is amenable to resolution in a court of law. As discussed in Division 1, courts cannot resolve disputes involving ecclesiastical matters. In particular, courts must consider whether the controversy involves

> the faith, teaching, doctrine, and discipline of the church such as expulsion from membership, internal procedures, quorums, or *determination of membership in the church*. If so, Georgia courts will not mediate such disputes, which we are forbidden to do by the constitutional safeguard of separation of church and state.[31]

"[C]ivil courts have no jurisdiction to inquire into and to control the acts of the governing authority of a religious organization undertaken with reference to its internal affairs."[32] It follows that the trial court abused its discretion in finding that all persons listed on the church's membership rolls were eligible to vote.

3. In their complaint, the appellees asserted that certain people were not members of the church because they were not admitted in accordance with the bylaws. Under the bylaws, members must be

---

[28] See *Harris County v. Penton*, 211 Ga. App. 498, 499 (1) (439 SE2d 729) (1993).

[29] Specifically, the bylaws provide that "[m]embers are expected, first of all, to be faithful in all its duties essential to the Christian life, and also to attend regularly the services of this church, to give regularly for its support and its causes, and to share in its organized work."

[30] See id.; *United Baptist Church v. Holmes*, 232 Ga. App. 253, 256 (1) (500 SE2d 653) (1998) (expulsion from membership is ecclesiastical matter).

[31] (Punctuation and footnote omitted; emphasis supplied.) *Horne v. Andrews*, 264 Ga. App. 145, 146 (1) (589 SE2d 719) (2003).

[32] *Anderson v. Dowd*, 268 Ga. 146, 147 (1) (485 SE2d 764) (1997).

"accepted by a vote of the church." The bylaws further provide that "[a]t any of the regular meetings for worship, the church may . . . act upon the reception of members."

In its order, the trial court found that the congregation never voted on whether to admit Wilkerson and his wife as church members. Similarly, the trial court found that Mr. and Mrs. Craddock were never admitted, as the vote on their membership took place at a fellowship dinner rather than a worship service. Thus, the trial court ordered that the church vote on the membership of these four individuals. On appeal, the appellants assert that this ruling by the trial court required it to delve into a church's membership, which courts are precluded from doing.

Without question, a church has the right to determine its own membership.[33] Here, the trial court simply found the individuals had not been admitted and required the church to follow its own procedure and vote on their membership. It is not beyond judicial purview to look to church documents to ascertain whether members were " 'duly elected.' "[34] Accordingly, we find no abuse of discretion with regard to this portion of the trial court's order.

4. After the appellees filed their complaint, the trial court issued a temporary restraining order prohibiting appellants "from taking any corporate action by or on behalf of [the church], to include the admission of new members or the termination of membership of any current members." Following the hearing, the trial court extended this order. On appeal, the appellants argue that the trial court's action impermissibly intruded into ecclesiastical matters. We agree.

"The constitutional guarantee of freedom of religion encompasses the power of religious bodies to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine."[35] Those matters include church membership and termination therefrom.[36] Accordingly, a civil court lacks authority to enjoin a church from either admitting or terminating its members.[37] It follows that the trial court abused its discretion in restraining the appellants from either admitting or terminating members.

5. In its order, the trial court found that the appellants "refused to allow the lawful votes requested by [the appellees]." In their final

---

[33] See *Srisovana*, supra.

[34] Id.

[35] (Punctuation omitted.) *Anderson*, supra.

[36] See id.

[37] See *First Born Church of the Living God v. Hill*, 267 Ga. 633, 634 (481 SE2d 221) (1997) (where church governance gives no legal right to members to wrest authority from church leaders, courts cannot intervene).

claim of error, the appellants contend that the "trial court erred in finding [that they had] obstructed proper votes."

We are unclear as to what relief the appellants seek as a result of this alleged error. To the extent that the appellants challenge the trial court's factual finding, it presents no basis for reversal. We will reverse the trial court's ruling on a request for injunctive relief only if there is "a total lack of evidence" to support that ruling.[38]

Here, the bylaws give "full and regular" members the right to vote and act on church matters. The document also provides that, "upon the written application of any five (5) adult members specifying the object thereof," a special meeting may be called. The appellees attempted to call such meeting at which a vote would be taken, but it was not allowed. Indeed, rather than permit the meeting, the appellants sought to terminate the appellees' church membership. Under these circumstances, there is some evidence supporting the trial court's finding that appellants obstructed the appellees, and we will not interfere with that finding on appeal.

*Judgment affirmed in part and reversed in part. Johnson, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 15, 2005 —
RECONSIDERATIONS DENIED DECEMBER 13, 2005 —

*Drew, Eckl & Farnham, W. Wray Eckl, Melanie C. Eyre,* for appellants.

*Page, Scrantom, Sprouse, Tucker & Ford, Deron R. Hicks,* for appellees.

